DAVID LAWSON, Plaintiff-Appellee, *v.* WILLIAM HILL *et al.*, Defendants-Appellants.

Second District No. 78-152

Opinion filed October 30, 1979.

Francis X. Mahoney and Barry Anderson, both of Nettles, Mahoney and Mahoney, of Freeport, for appellants.

Peter D. McClanathan, of Kroeger, Burt & McClanathan, of Freeport, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendants, William and Dianne Hill, appeal from a judgment

entered in favor of plaintiff, David Lawson, following a bench trial, establishing an easement of necessity by implication across the defendants' land in favor of the plaintiff and establishing an easement by prescription across defendants' land in favor of plaintiff. Plaintiff cross-appeals from those portions of the judgment which denied him a bill to quiet title, refused to allow reformation of the deed between defendants and third parties, denied him money damages, and allowed the defendants the option of relocating the easement at plaintiff's expense.

For a complete understanding of the issues raised in this appeal a rather detailed history of the land involved and the testimony of the various witnesses at trial is required. A sketch depicting the location of the various parcels and the means of access is set forth at this point.

Plaintiff is the owner of two tracts of land lying to the west-northwest of land owned by the defendants. During this litigation plaintiff's two tracts came to be known as plaintiff's parcel I (the northerly tract), purchased from Lewis Robieson and plaintiff's parcel II, purchased from George Lobdell. Plaintiff's land is surrounded on three sides by the Pecatonica River, except south of parcel II which borders on land owned by Viola Hall and the defendants' parcel I.

Plaintiff's parcel I had been owned by the Robieson family continually from the time of their entry and patent from the United States government until their sale to plaintiff in 1974. Plaintiff's parcel II, the southerly tract, had been entered in 1846 by one Wilson, together with the land now owned by defendants. After obtaining a patent from the government, Wilson conveyed the entire acreage to Justice B. Gates on May 27, 1847. The Gates' tract then included plaintiff's parcel II, the property owned by Viola Hall and defendants' parcels I and II. Gates conveyed the west one-half of the above property to Reuben Curtis on December 2, 1848. The conveyance from Gates to Curtis was the first severance between the parcels now owned by plaintiff and defendants. Curtis then conveyed this property (the west one-half) to O. W. Brewster, reserving the northerly 10 acres for himself.

Eventually the property now owned by defendants was owned by Jacob Kraft who placed a mortgage on the land; the mortgage was foreclosed and the property conveyed by warranty deed to Lionel J. Johnson in 1939. This deed was made "subject to all existing public and private roads and easements." The property was then deeded to Luella Johnson on November 21, 1939, and then to Charles Wichmann on February 28, 1950. Both of these conveyances were made "subject to all public and private roads now located." In 1959 Viola Hall acquired acreage south of plaintiff's parcel II, east of the river from Jesse Robieson.

Subsequently the estate of Charles Wichmann sold all the property now owned by defendants to Rachel M. Wise by executor's deed of January 23, 1973, which deed was made excepting "that part taken for public road purposes." L. Keith Wise and Rachel Wise (husband and wife) then conveyed this property (now designated defendants' parcels I, II and III) to defendants by warranty deed of April 5, 1973.

We digress from this historical synopsis to note that a discrepancy existed between the articles of agreement between the defendants and the Wises and the deed that was ultimately delivered from the Wises to defendants. The articles of agreement were made "subject to all public and private roadways or easements now located" which language had appeared in all the conveyances since 1939, whereas the warranty deed failed to include this language. However, the articles of agreement were signed by the defendants and, in a letter to L. Keith Wise dated December

22, 1972, the defendants' attorney stated that both defendants realized that there may be an easement of ingress and egress owned by some of the adjoining property owners.

Plaintiff acquired what is now known as plaintiff's parcel I from Lewis Robieson by a warranty deed of May 31, 1974. At the time of the transaction it was agreed that Robieson represented to plaintiff that the right to ingress and egress over a private road leading to the premises was in dispute; that Robieson would seek to obtain a written agreement establishing the right to use the roadway or, in the event that such agreement could not be obtained, that a determination of the right-of-way would be sought by legal action; and that one-half the legal costs would be paid by plaintiff. However, the failure to reach such an agreement or obtain a favorable legal determination would not affect the contract. Plaintiff then acquired plaintiff's parcel II from George Lobdell by warranty deed on August 20, 1974. An addendum to the agreement between the Lobdells and plaintiff, dated June 1974, provided that the Lobdells would convey any and all easements for ingress and egress that they had.

During the time span of the above conveyances a trail led across the lands now owned by defendants to the lands now owned by plaintiff and provided the sole access by land to the latter property. Upon plaintiff's purchase of the land from Robieson and Lobdell, defendants refused plaintiff access by means of this trail. Plaintiff's rights to the use of this trail is the subject of this litigation.

At trial both sides called a number of witnesses whose testimony was both lengthy and detailed as to the history and the use of the trail in question. As it would unnecessarily lengthen this opinion to recite the testimony in detail, this opinion will relate only that testimony particularly pertinent to the issues at hand.

Lewis Robieson, age 76, who had sold the land now designated plaintiff's parcel I to plaintiff, testified that his recollection of the use of the land by his father went back to the time he was 14, at which time piling was hauled from the tract. His family had run a saw mill; cut and sold timber; and at one time some of the land was cleared and farmed. He also testified that for 10 years (1961 to 1971) the land was in the soil bank. He and his family always came onto the land from Beaver Road, then over a trail (the subject of this dispute) running over the land now owned by defendants. Robieson further testified that the disputed trail which proceeds southwesterly from defendants' buildings along the river, was a winding trail and not in very good condition. He made improvements on it; checks were admitted showing his expenditures for maintenance and improvement of the road. On cross-examination he testified he never asked permission to use the trail but on some occasions went to see for

himself if the road was washed out, or called a Mr. Wichmann, who then owned the premises, to ascertain the condition of the road. He revealed that the Krafts, who at one time owned the property now owned by defendants, were relatives of his family and that he had done some plowing for them. Once he would get to the Lobdell property, he simply went across it.

William Lobdell, age 61, testified that he farmed with his father on shares land which is now designated plaintiff's parcel II; that his father had purchased the northerly portion of that tract 39 years ago from his grandfather's estate. According to Lobdell, whenever he and his family went into the property they used the lane from Beaver Road north to the buildings located on parcel III of the defendants' land and then followed the trail along the river to their land. He further testified he often saw Lewis Robieson and others go across the Lobdell land and he knew that there was farmable area on the Robieson land. He knew of his own knowledge that the dirt tract running from defendants' buildings to his father's property had been there for 39 years and that at one time there was a clearly definable two-lane track through his father's property to the Robieson property. He never asked anyone's permission to use the route just described, and there was no other way to get onto the Lobdell property.

Dalon Wichmann testified that he owns the farm adjoining defendants' property on the east; however, beginning in 1949 he and his family had lived and farmed on the land now owned by defendants. He knew one Johnson, a previous owner of defendants' property, Lewis Robieson and George Lobdell (William's father); he had helped Robieson farm a portion of plaintiff's parcel I, and that Johnson did not stop Robieson from using the route from Beaver Road to the Robieson property. He testified that he had seen Robieson drive a tractor and a hayrack with his machinery on it along the route in question; when he farmed it, he went in about four or five times a year. He saw loggers follow the same route, and that he had seen George Lobdell go onto his land by the same route; he also saw people employed by Robieson bulldoze the trail that went from the buildings southwesterly along the river bank. He further stated that neither Lobdell nor Robieson ever called or asked permission to use the route and neither he nor his father had ever stopped either Robieson or Lobdell from using the route. According to Wichmann, one Dude Hall had also used the route, including the trail along the river, and helped improve it with gravel purchased from Wichmann's father. As far as he knew, there was no other way of access to the lands in question.

The evidence deposition of George Lobdell disclosed that he was 86 years of age and that he had previously owned plaintiff's parcel II; he had

purchased it 36 years ago from his father's estate; that his father had owned it for at least 50 years and his grandfather had owned the upper portion of the tract. According to Lobdell, his family grew timber on the land and took trees off; that to get to the property they went to Beaver Road, down the lane, and then followed the river to the land and that they did not think it necessary to get permission and no one ever objected. He and his father did cross the river when it was frozen. He did not know who put the road in but Jake Kraft (a former owner of defendants' land) always left a little spot along the river so that they could get to their property. He was 10 years old when he first remembered using the road, and when the Robiesons came in they went over the Lobdell land; later Dude Hall also crossed his property to get to the Hall property. On cross-examination he testified that he saw Robieson take farm equipment in and out of his land over the Lobdell property, the trail south of the river and the lane north to Beaver Road. Further, that occasionally he crossed the river in the winter to cut timber because it was six times as far to go around using the Kraft property (now defendants' property). He supposed his father may have originally gotten permission but he did not know and he took it for granted that he had permission. When he was working the property 20 years ago, he went in that way. There was a dirt road when he went in four or five years ago; no one ever prevented him from using the road and no one ever had put a chain across it.

In an evidence deposition attorney Michael Mahoney testified that he represented the defendants in connection with the purchase of their land. In a letter he wrote to L. Keith Wise he indicated that defendants were both aware that there might be an easement of ingress and egress owned by some of the adjoining property owners.

L. Keith Wise testified that he is a realtor and an appraiser; that at the request of Dalon Wichmann he had entered into a contract on behalf of Wichmann with the personal representative of the Charles Wichmann estate; that Dalon Wichmann could not finance the purchase of the entire acreage; and that it was agreed that Wise would sell a portion of it to someone other than Dalon Wichmann. When Wise showed the property to defendants the trail leading southwesterly along the river from the buildings was visible. He testified that he mentioned the Hall property and that there were a couple of other pieces of property above the Halls that people went in and out of at certain times; apparently, however, no specific names were mentioned. Wise was concerned about the easements and had spoken to Dude Hall who was also concerned about being able to use the roadway. He was familiar with the language concerning private roads and easements contained in the previous conveyances and restated that language in the articles of agreement with defendants; however, he failed to realize that the language was not contained in the conveyance

from the executor of Charles Wichmann's estate to his wife, Rachel Wise. He further testified that he was aware that the trail along the river was the only access to the Hall, Robieson and Lobdell properties and that it was used for logging, farming and coon hunting. The deed from the Wises to defendants omitted the statement regarding private roadways and easements.

Glen Carlson, an appraiser of real property, testified as an expert witness for plaintiff. He testified that the highest and best use of plaintiff's parcels I and II was recreational, with agricultural use for the cleared land area; that 7.2 acres were at one time cleared and he valued the land for recreational purposes at $550 per acre and farmland at $1000 per acre; further, he estimated the gross rental for agricultural use of the 7.2 acres was $50 per acre gross and $45 net. In his opinion there could be 20 to 23 acres of land on plaintiff's parcel I for agricultural use. On cross-examination he testified that he had gone to the premises by boat; he did not know about the trail and hadn't seen it. It was also established by his testimony that unless a special permit was granted no buildings could be erected since the property was in a flood plain area.

Plaintiff testified that he planned to use the land for recreational purposes and for farming, hoping to enlarge the field up to 20 acres. The only way to get into the property he purchased was by entrance from Beaver Road north to defendants' buildings and along the trail. After he purchased the property at the end of Beaver Road, the road was always chained off. He spoke to defendants about using the trail but defendants were not interested in talking about it; he has never been permitted to use the trail. On cross-examination plaintiff admitted he knew of the problem of ingress and egress when he purchased the property and that it was his opinion that he had made a good purchase whether he could get into the property or not.

Dianne Hill, one of the defendants, testified that she viewed the property before she and her husband purchased it. L. Keith Wise had advised her husband and herself that Dude Hall had put the road in and was entitled to use it; however, no other names were mentioned. She further testified that she had seen and was aware of the letter from attorney Mahoney. Her husband had excluded people from coming onto the property and had placed a chain across the trail.

William Hill, the other defendant, testified that he never went westerly along the trail south of the river but that he was told about Dude Hall and remembered a conversation with Keith Wise in which Wise had wanted to make sure Dude Hall could get into his own property. He stated that Wise never mentioned Lobdell or Robieson; that he had read the title commitment and that it contained no reference to any easement

other than the recorded Folgate easement located on defendants' parcel II and his attorney confirmed this. He also testified that plaintiff never came to discuss the matter of access with him. He understood that Dude Hall had put in the trail and that, therefore, he should be allowed to use it. He had an agreement to buy the Hall property from Viola Hall, the widow of Dude Hall. Viola Hall testified that she had purchased the property lying immediately west of defendants' parcel I from Jesse Robieson in 1959. She and her husband spent winter holidays at the cabin which they built on the property and weekends, particularly in the summer, and they continued to do so until her husband's death in 1975. When they first went on the property prior to purchasing it they walked in from the Wichmann property; later they drove over plowed land along the river bank and that later they had pulled the trailer in with Wichmann's tractor. They went along the river bank to the woods and then in between the trees; there was no real road; the trail was rough and they banged up the trailer going through the trees. She further testified that in rainy weather they had trouble getting out because the trail became soft and muddy; however, in 1962 her husband and Dalon Wichmann graveled both the lane going north from Beaver Road and the trail. She knew Lewis Robieson but had never seen him on his property nor had she seen Lobdell on his property. On cross-examination she testified that when loggers came up to the property neither Dalon Wichmann nor William Hill had ever stopped them. She has a key which enables her to go to and from the property despite the chain placed across the trail.

The trial of the case concluded in September of 1977 and briefs were then exchanged. On December 1, 1977, plaintiff moved to amend the pleadings to conform to the proof by adding three additional counts to the complaint: count IV alleged an easement by express grant; count V alleged that plaintiff was a third-party beneficiary to the contract between the Wises and defendants and sought reformation of the deed so as to conform to the contract; and count VI alleged an easement by prescription. The trial court allowed the amendments over defendants' objection.

In a detailed and well-written memorandum, the trial court discussed the testimony pertaining to each count of the complaint at length. The trial court granted plaintiff the requested easement over defendants' land on two of the six counts of plaintiff's complaint, count II alleging the easement of necessity by implication and count VI alleging the easement by prescription. The easement awarded under count II was restricted to plaintiff's parcel II. Under this count defendants were given the option of relocating that part of the easement that extends onto defendants' parcel III, at plaintiff's expense. The easement granted under count VI contains

no such restriction and extends to both of plaintiff's parcels. The trial court's final decree contains the option of relocation of the easement under count II.

The first issue raised is whether the trial court abused its discretion in allowing plaintiff to amend his pleadings at the close of the evidence. The history of the pleadings in this case is almost as lengthy and complex as that of the land in this case.

Plaintiff's original four-count complaint was filed in February 1975. Defendants filed a motion to dismiss. One of the matters raised in the motion was that count IV of the complaint did not state the necessary elements of the adverse possession. Counsel for plaintiff stated that count IV, as drawn at that time, did not require the elements of adverse possession because it was not drawn to state such a claim. Counsel for plaintiff further indicated that the legal theory was that the easement had risen first by implication and then became a matter of record. It appears from the discussion between the trial court and counsel for both plaintiff and defendants that plaintiff was not claiming adverse possessory rights under the complaint as drawn at the time. The trial court thereafter dismissed the complaint as to all four counts with leave to file an amended complaint. Plaintiff filed an amended complaint in three counts, none of which alleged adverse possession. The trial court dismissed all but count III. Plaintiff then filed a second amendment to the complaint and defendants moved to dismiss the amended count I but filed an answer to counts II and III. The trial court denied the motion to dismiss and defendant answered count I. Due to the large volume of pleadings, the case went to trial on an agreed packet of pleadings.

Section 46 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46) provides, in pertinent part:

"(1) At any time before final judgment amendments may be allowed on just and reasonable terms * * * changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross demand.

\* \* \*

(3) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just."

The general rule is that the allowance of material amendments after the evidence has been closed rests largely in the discretion of the trial court and his ruling will not be disturbed on review except in cases of

clear abuse. To the end that justice may be done, courts are liberal in allowing amendments to conform pleadings to the proof, but their materiality to the evidence already introduced must be apparent. (*Powers v. Sturm* (1973), 12 Ill. App. 3d 346, 297 N.E.2d 628.) In *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164, this court stated that the greatest liberality should be applied in allowing amendments and that the most important question is whether the amendment will be in the furtherance of justice. Therefore, while recognizing that an amendment should not ordinarily be permitted to set up matters of which the pleader had full knowledge at the time of interposing the original pleading and no excuse is presented for not putting its substance in the original pleading, such an amendment will be allowed where justice is not served by denying leave to amend; doubts should be resolved in favor of allowing amendments. "The liberal policy of permitting amendments to pleadings is in accord with the salutory principle that controversies ought to be settled on their merits in accord with the substantive rights of the parties." *Stevenson v. Maston* (1969), 107 Ill. App. 2d 65, 70, 246 N.E.2d 38, 40.

Defendants contend that the statements of plaintiff's counsel on defendant's motion to dismiss count IV of the original complaint and apparently the subsequent failure to allege any adverse possessory rights in the subsequent amended complaints waived plaintiff's right to amend his pleadings to allege an easement by prescription. Further, they urge that, as the parties had agreed to the packet of pleadings, the pleadings were settled except for the defendants' motion to file affirmative defenses; that the defendants were taken by surprise by the allowance of the amendment; and that defendants would have prepared for trial differently and presented their case differently had the plaintiff's pleading alleged an easement by prescription.

■■ Examination of the colloquy between counsel for the parties and the trial court indicates that the statements of plaintiff's counsel were explanations of the complaint as it was drawn at that time in order to help the court understand its allegation in connection with the motion to dismiss. We cannot see how such explanatory comments could be considered a waiver by plaintiff of the right to seek to amend his pleadings and to have the amendment allowed if warranted by the proof adduced at trial.

■■ With regard to the agreed packet of pleadings, we find nothing in the record to indicate that this packet of pleadings was presented as a final, definitive limitation on what claims or defenses could be raised by future pleadings. The record, in fact, suggests otherwise. Defense counsel indicated prior to trial that he might seek to file affirmative defenses at some point in the trial. The trial court indicated it would consider the request at such time as the request was made and stated,

"We will consider anything else so far as the amendment of pleadings is concerned that is considered appropriate."

Further, later in the trial the trial court indicated that it would not place the parties in the position of being precluded from filing pleadings, even though the pleadings had at that time been condensed in a package.

■■ Finally, a review of the record contradicts defendants' contention that they were taken by surprise by the amendment and would have prepared differently for trial. Plaintiff presented a substantial amount of testimony on the issue regarding adverse possessory rights and defendants cross-examined on that point. Defendants perhaps could or should have prepared and tried their case differently but not for the reasons that they were taken by surprise by the allowance of amendments on the theory of prescriptive rights.

We conclude, on the basis of the above discussion, that the trial court properly granted plaintiff's motion to amend the pleadings to conform to the proof.

Next defendants contend that the trial court erred in finding that plaintiff had proved an easement by prescription. In order to prove a claim of a prescriptive easement the claimant is required to show that his use of the land has been adverse, uninterrupted, exclusive, continuous and under a claim of right for a period of at least 20 years. (*Smith v. Mervis* (1976), 38 Ill. App. 3d 731, 348 N.E.2d 463.) Whether a prescriptive easement has been acquired and whether the use has been adverse or permissive are questions of fact, and this court cannot reverse findings of fact unless they are against the manifest weight of the evidence. See *Smith v. Mervis*.

■ Defendants rely on *Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424. The trial court discussed *Roller* in its written memorandum. In *Roller* the plaintiff brought suit against defendant to enjoin the defendant's alleged trespass on his property. Defendant asserted that a prescriptive easement existed. The trial court found in favor of defendant but the appellate court reversed. The record showed that specific permission to use the roadway had been given at one point; that the defendant had other means of ingress and egress; and that it was a neighborly custom to allow people to cross the land to go fishing. The trial court here determined that these facts in *Roller* distinguished it from the case at bar, and we agree. On the basis of the testimony at trial, pertinent portions of which we have related above, the trial court found that the use of the easement was acquiesced in by all the owners of the servient estate until that property was acquired by defendants; that the use was not permissive; that the identity of the easements was established; and that the use, while sporadic due to the nature of the property and the uses to which it was put, was uninterrupted and continued for more than 20

years. It would unduly lengthen this opinion to reiterate the evidence in the record relied on by the trial court in making these findings of fact. Suffice it to say, therefore, we have carefully reviewed the record and conclude that these findings of fact were not against the manifest weight of the evidence.

■■ Next, defendants argue that the trial court erred in finding that plaintiff had proved the existence of an easement of necessity by implication (count II). Elements necessary to establish an easement by implication are as follows: (1) a separation of title; (2) prior to separation, a use so long continued or obvious as to indicate permanency; and (3) use of the claimed easement must be essential to the beneficial enjoyment of the land granted or retained. (*Baylor v. Thiess* (1971), 2 Ill. App. 3d 582, 277 N.E.2d 154.) Further, the necessity for the way must exist at the time of the conveyance. See 25 Am. Jur. 2d *Easements and Licenses* §36 (1966).

As the trial court indicated in its discussion of count II, the separation of title apparently occurred in 1848 when Gates, whose tract included plaintiff's parcels I and II, the Hall property and defendants' parcels I and II, conveyed the west one-half of the above property to Reuben Curtis. The trial court then went on to state that upon severance Curtis had no way to reach his land other than by crossing the Pecatonica River.

■■ Defendants dispute the necessity of the easement since the Pecatonica River is navigable and that, in the last approximately 70 years, the only use of plaintiff's parcel II was for logging activities, for which the river would have provided convenient access. While there was testimony concerning the various logging activities, much of the defendants' argument is speculative, particularly as to whether Curtis would have made the 20-mile trip over the land when he could just haul the wood across the river. Further, we agree with the plaintiff that the necessity required for establishing an easement by necessity need not be absolute in the sense that there can be no use whatever of the land without the exercise of the easement. See *Fossum v. Stark* (1922), 302 Ill. 99, 134 N.E.2d 12.

■■ Nevertheless, we are of the opinion that there was insufficient evidence in the record to support the finding of such an easement. In finding that "there was no reason to believe that horses and wagons didn't traverse a good number of miles in a day to accomplish the purpose of their owners and drivers," the trial court itself could only speculate that the land route was preferable to crossing the Pecatonica River, the route which defendants speculated would have been convenient, if logging operations were engaged in. While it is true that there was evidence of logging operations that took place at various times, there was no indication what use was made of plaintiff's parcel II when the severance took place in 1848.

The trial court indicated that, while it was aware it was dealing with circumstances existing in 1848, it perceived that the law was the same as it is now and that public policy requires that land should not be rendered unfit for occupancy or use, and we are in total accord with that statement. However, though we do not find sufficient evidence to support the easement of necessity by implication, plaintiff still retains the easement by prescription, as we have previously found. We would also point out that our disposition on count II also disposes of any issue raised by plaintiff concerning the relocation of the easement, which was made an option under the finding in count II.

Next, defendants contend that the trial court should have considered the 75- and 40-year statutes of limitation (Ill. Rev. Stat. 1975, ch. 83, pars. 10a, 12.1). Defendants were granted leave to file these affirmative defenses during trial. However, following trial, defendants and plaintiff submitted briefs to the trial court discussing the various issues in the case. Defendants' brief contained the following statement:

## "AFFIRMATIVE DEFENSE

With regard to the affirmative defenses, plaintiff has claimed surprise. In order to expedite a decision by this court in connection with the issues in this suit excluding the affirmative defenses filed by the defendants, the defendants are at this time willing to waive the affirmative defenses which were permitted to be filed by the court. The decision of this court can be made disregarding the affirmative defenses which have been filed by defendants."

■■ It is well established that issues, points, questions or contentions which were not presented to the trial court will not be considered on appeal, nor can a party-litigant change his theory upon which a case is tried in the lower court upon reaching a court of review. (*Williams v. City of Gibson* (1970), 129 Ill. App. 2d 431, 263 N.E.2d 138.) It is apparent that these defenses were presented to the trial court during the trial. However, the above waiver by defendants prevented their consideration by the trial court in reaching its decision. Therefore, the above rule applies here as well, and we therefore will not consider these affirmative defenses.

Assuming, *arguendo*, that these defenses were not waived, the 75- and 40-year limitation statutes would not be applicable, as we have determined that the finding of an easement of necessity by implication was not supported by the evidence. Nor would they apply to a finding of an easement by prescription. See Ill. Rev. Stat. 1975, ch. 83, par. 12.3.

On his cross-appeal plaintiff makes the following contentions: (1) that the trial court erred in denying a bill to quiet title; (2) that the trial court erred in denying reformation of the deed between defendants and the Wises in favor of plaintiff; (3) that the trial court erred in failing to award

money damages to plaintiff; and (4) that the trial court erred in granting defendants the option of relocatir g the easement at plaintiff's expense.

We have previously disposed of the issue regarding the relocation of the easement in our discussion of the easement of necessity by implication. As for the issues concerning the bill to quiet title and the reformation of the deed, these issues appear to be raised only as further support for the trial court's finding of the easements. As we have concluded that the trial court correctly found that plaintiff was entitled to an easement by prescription, we see no need to further lengthen this opinion by discussion of these issues.

■■ Turning to the issue of money damages, plaintiff contends that he is entitled to damages for defendants' unjustifiable refusal to allow him access to the easement since 1974. The trial court found that plaintiff had not presented sufficient evidence to determine such damages. The only testimony with respect to damages was given by Glen Carlson, who testified for plaintiff. His testimony related to the highest and best use of the land as being recreational with agricultural use. He testified as to what he believed might be farmed and as to the gross and net rentals of the land which could be farmed. In addition, the trial court, by stipulation of the parties, both flew over the property in question and walked over the property and, in its memorandum, indicated that the property is overrun with brush and trees and even the 7.2 acres once cultivated is not presently ready for cultivation. Further, as the trial court pointed out, there is no testimony as to the expense of improving the land or as to its productivity. Finally, on cross-examination, plaintiff himself indicated that to him the purchase of the property was a good buy whether he could or could not get onto the property. Therefore, we conclude that the trial court properly denied money damages to plaintiff.

On the basis of the foregoing, therefore, we reverse the trial court's decision insofar as it found an easement of necessity by implication and permitted the relocation of the easement. In all other respects, the decision of the trial court is affirmed.

Reversed in part and affirmed in part.

LINDBERG and NASH, JJ., concur.