THOMAS RYAN, Plaintiff-Appellee, v. MOBIL OIL CORPORATION, Defendant-Appellant and Third-Party Plaintiff-Appellant (Errol C. O'Brien, Indiv. and d/b/a J-B Industrial Painting, *et al.*, Third-Party Defendants-Appellants).

First District (1st Division)   No. 85—3590

Opinion filed June 29, 1987.

Rooks, Pitts & Poust, of Chicago (Terrence E. Kiwala, Beth L. Beucher, Robert C. Fox, and Arthur G. Hoffman, of counsel), for appellant Mobil Oil Corporation.

William J. Harte, Ltd., of Chicago (William J. Harte and Mary E. Rosen, of counsel), for other appellants.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Curt N. Rodin, Nat P. Ozmon, and Ario A. Garibaldi, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This case arises from personal injuries the plaintiff, Thomas Ryan (Ryan), suffered while riding on the sidewall of a pickup truck owned and operated by his employer, J-B Industrial Painting (J-B), the third-party defendant. The accident took place while Ryan was being transported on the premises of the defendant, Mobil Oil (Mobil).

On August 20, 1979, Ryan was painting, sandblasting and water-blasting at the Mobil Oil Refinery in Joliet, Illinois. At the time of the accident, Ryan was returning from his afternoon work break. He was riding in the back of a truck owned by J-B and driven by its foreman, John DeFrancesco. The accident occurred when DeFrancesco drove the truck off the main road and through a graveled area. He observed what appeared to be shallow puddles and drove through them. The truck bounced as it proceeded through the puddles, and plaintiff fell down in the bed of the truck and was injured.

Plaintiff was taken to the hospital where he saw Dr. Douglas Adelman. Dr. Adelman testified that he saw Ryan for the first time on the day of the accident. At this time he was complaining of pain in his lower back and left leg. X rays were taken of plaintiff's back, but the results failed to show the cause of his pain. Subsequent tests were taken, but these tests also failed to show the cause of Ryan's pain.

Dr. Adelman saw plaintiff on January 20, 1983, and found persistent back and leg pain. He recommended a CAT scan, which was performed on February 1, 1983. The CAT scan revealed a ruptured spinal disc. Dr. Adelman recommended surgery on plaintiff's back, which was performed on March 7, 1983. The surgery removed the ruptured spinal disc.

Ryan sued Mobil for the injuries he suffered to his back which allegedly have prevented him from working and enjoying everyday acti-

vities of life. In his complaint, Ryan alleged that Mobil was negligent in the manner in which it maintained its roads and for failing to make reasonable inspections and necessary repairs. Subsequently, he amended his complaint. The amended complaint alleged that Mobil was negligent because it permitted plaintiff to stand in the pickup truck in violation of Mobil's safety rules. The amended complaint further alleged that Mobil was negligent because it allowed J-B to operate pickup trucks at the refinery in violation of its safety rules. The jury found Mobil liable and awarded a verdict of $520,000, which had been reduced by 25% because of plaintiff's comparative negligence.

Mobil countersued J-B for indemnity and contribution pursuant to a contract between them. Mobil alleged that if it is liable to Ryan, then J-B would be liable to it, because J-B's employee drove at an excessive speed and failed to keep an adequate lookout for unsafe conditions in the graveled area. Mobil also alleged that J-B was negligent in failing to provide seats and safety belts in the truck bed. The latter allegations were never sent to the jury. The jury found J-B 50% liable. J-B and Mobil both appeal the jury's verdict.

I

Mobil initially argues that the trial court abused its discretion when it allowed plaintiff to amend his complaint at trial. According to Mobil, the amended complaint presented a new theory of liability unrelated to the original theory. Mobil claims these amendments unfairly prejudiced its case because it had not been allowed to conduct discovery and prepare a defense to meet the new allegations.

■■ It is well settled that the decision whether to allow an amendment to a complaint lies within the sound discretion of the trial court, and its decision will not be disturbed absent a showing of an abuse of that discretion. (*Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 491, 470 N.E.2d 1264, 1267.) A trial court's power to allow amendments should be freely exercised in order that litigants may fully present their causes of action. (*Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 762, 410 N.E.2d 205, 208.) The greatest liberality should be applied in allowing amendments and the most important question is whether the amendment will be in the furtherance of justice. (*Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 845, 396 N.E.2d 617, 625.) The court in *Lawson* explained:

> "[W]hile recognizing that an amendment should not ordinarily be permitted to set up matters of which the pleader had full knowledge at the time of interposing the original pleading and

no excuse is presented for not putting its substance in the original pleading, such an amendment will be allowed where justice is not served by denying leave to amend; *doubts should be resolved in favor of allowing amendments.* 'The liberal policy of permitting amendments to pleadings is in accord with the salutory principle that controversies ought to be settled on their merits in accord with the substantive rights of the parties.' [Citation.]" (Emphasis added.) *Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 845, 396 N.E.2d 617, 625, quoting *Stevenson v. Maston.* (1969), 107 Ill. App. 2d 65, 70, 246 N.E.2d 38, 40.

In the instant case, plaintiff failed to give an excuse for the lateness of his amendments. However, as *Lawson* explained, a party should not be precluded from amending his pleadings even though he has no excuse. If justice would not be served by denying leave to amend, then the trial court acted properly in allowing the amendment.

The record demonstrates that plaintiff's new theory of liability merely presents issues that Mobil had interjected into the litigation earlier in connection with its claim against J-B. In its original complaint against J-B, Mobil alleged negligence for failure to follow its safety regulations. Before Mobil dropped this allegation from its case, the safety regulations were in controversy.

When Ryan amended his complaint he was not introducing novel issues into the case. Rather, he was reintroducing issues that Mobil had put into controversy. Moreover, these new issues were based on Mobil's own safety regulations; its request for a continuance to conduct more discovery on this point would have served no purpose except to delay the trial.

■ Allowing the amendments did not cause any undue prejudice or hardship for Mobil. While it is true that Ryan could have amended his pleadings earlier, justice would not have been served by denying him leave to amend. (*Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 845, 396 N.E.2d 617, 625.) The trial court did not abuse its discretion when it allowed plaintiff to amend his pleadings.

## II

■ Mobil next argues that the jury's verdict is against the manifest weight of the evidence because the evidence did not show it violated any duty that it owed to plaintiff. A reviewing court will not disturb a jury's verdict unless an opposite conclusion is clearly apparent or the finding of the jury appears to be unreasonably arbitrary and not based on the evidence. (*Chapman v. Checker Taxi Cab Co.* (1976),

43 Ill. App. 3d 699, 709, 357 N.E.2d 111, 119.) The jury as trier of fact is in a superior position to a reviewing court to determine the witness' credibility and weigh the evidence. *Schulenberg v. Signatrol* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626.

■ With these general rules in mind, we consider the merits of Mobil's arguments. Mobil claims that it did not breach its duty to maintain its premises. Mobil argues that Ryan failed to show that, "[first], Mobil knew about, or with reasonable care should have known about the puddle in question and that it presented an unreasonably dangerous condition; secondly, that the condition of the puddle was latent and not likely to be discovered by Plaintiff; and thirdly, that despite Mobil's actual or constructive knowledge of the latent defect, Mobil failed to exercise reasonable care to protect Plaintiff from danger." These contentions ignore the testimony of Mobil's transportation supervisor, James Bruno, who was called as an adverse witness by Ryan, and James Madonis, who was a J-B employee riding in the bed of the truck at the time of the incident.

Madonis testified that the pothole in the graveled area looked like a "puddle." Only after the truck drove through the "puddle" did he realize that it was a pothole "shaped like a figure 8," three feet long, a foot and a half wide and six to eight inches deep.

Bruno testifies that in 1979, the year of the accident, it was a part of his job to inspect all roadways in the plant. He further testified that he did not believe that there were signs warning drivers not to drive through the graveled area. In addition, he testified that in the graveled area in question, if the holes were five to eight inches deep, he would do something about it. Furthermore, he testified that prior to the date of the accident, he saw potholes in the graveled area.

This testimony definitely shows that Mobil was aware of potholes in the graveled area and considered a pothole of the dimensions described to be a problem requiring remedial actions. In addition, a pothole of the size described by Madonis would amply support a finding that the condition was unreasonably dangerous.

Secondly, Madonis' testimony showed that the pothole appeared as a "puddle." There is no testimony that demonstrates that any of J-B's employees realized or had reason to know that the "puddle" really was a large and rather deep pothole posing a danger to vehicles. The true condition of the roadway was a latent danger to plaintiff.

Thirdly, Bruno's testimony demonstrates that despite being aware of the potholes, he did nothing to warn or prevent trucks from traveling across the graveled roadway. Based on all this testimony, the rec-

ord supports a finding that Mobil breached a duty owed to a business invitee.

## III

■■ Mobil next argues that Ryan attempted to prove at trial that it was liable for his injuries because it failed to enforce Occupation, Safety, Health Administration (OSHA) regulations. Mobil contends that it could not be held liable on this basis because it did not owe Ryan a duty to enforce OSHA regulations for his benefit. *Barrera v. E.I. Du Pont De Nemours & Co.* (5th Cir. 1981), 653 F.2d 915.

This argument misconstrues the nature of the proof Ryan presented to the jury. Ryan did not attempt to prove that Mobil owed him a duty to enforce OSHA regulations. Rather, he presented article 18 of the contract Mobil had with J-B. This provision was a job specification which required that J-B perform its work in compliance with OSHA. During the direct examination of James Bruno, he stated it was Mobil's duty to insure that a contractor's work met the job specifications of the contract. The following colloquy is an excerpt from Bruno's testimony:

"Q. But sometimes they [J-B] don't do the job that you want them to do and you have various remedies, don't you?

A. For specifications, I certainly do.

Q. And part of the specifications of this job is that the work conform with OSHA, isn't that right?

A. The work conformed to OSHA, correct.

Q. That's one of the specifications that as contract coordinator you're there to see it's followed, right?

A. Correct."

Ryan never claimed that the regulations imposed a "duty" on the part of Mobil. The duty that Mobil owed to plaintiff was derived from its contract with J-B. The OSHA regulations were among the job specifications that J-B was required to meet under its contract. The evidence presented amply supports a finding that Mobil owed Ryan a duty to insure that J-B complied with the regulations, and the jury instruction on the regulations properly framed the purpose of the regulation:

"The O.S.H.A. provisions read to you during the course of the trial do not have the force of law for the purposes of this case. However, the provisions of O.S.H.A. are evidence and may be considered by you together with all the other evidence in the case in determining the verdict."

■■ Alternatively, Mobil claims that there was no evidence to sup-

port a finding that Mobil could be held liable for J-B's failure to follow its safety rules. As a general rule an owner of property who employs an independent contractor is not liable for the acts or omissions of the contractor. (*Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 488, 302 N.E.2d 642, 648.) An exception to the general rule exists where the employer retains some control over the operative details of the contractor's work. *Coty v. U.S. Slicing Machine Co.* (1978), 58 Ill. App. 3d 237, 241, 373 N.E.2d 1371, 1375.

■ ■ Mobil contends that Ryan did not show it exercised sufficient control over J-B's activities to support the jury's verdict. The court in *Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 488, 302 N.E.2d 641, 648, explained the degree of control that the employer of a contractor must retain to impose liability. *Pasko* explained that:

> "The power to forbid work from being done in a manner likely to be dangerous to himself or others is given as an illustration of the type of power retained by an employer which could subject him to liability." 14 Ill. App. 3d 481, 488, 302 N.E.2d 642, 648.

In the instant case, Ralph Mosca, Mobil's contract coordinator, testified that he supervised the activities of J-B. He further testified that he was concerned with the safety of the work J-B was doing. He admitted that Mobil had the responsibility to insure that J-B's work was being done in a safe manner. It was his job to stop J-B from doing anything in an unsafe manner.

James Bruno, who was Mobil's transportation supervisor at the time of the accident, testified as an adverse witness. He testified that if there was an unsafe act being performed by a contractor with a vehicle, he would either stop the individuals or contact the contract coordinator. Furthermore, he stated that any Mobil employee would have the authority to stop an unsafe act if he saw it taking place.

The testimony of Mosca and Bruno shows that Mobil retained authority over J-B to stop unsafe work from going ahead. This type of control is sufficient to subject Mobil to liability for permitting J-B to violate its safety rules.

## IV

■ Mobil next argues that Ryan's failure to identify Dr. Douglas Adelman as an expert witness and his failure to disclose the substance of Dr. Adelman's testimony before trial violated Supreme Court Rule 220. (107 Ill. 2d R. 220.) Ryan first visited Dr. Adelman at the time of the accident seeking treatment for his back problems. Just

prior to trial, Dr. Adelman examined Ryan for the purpose of preparing for trial and not for treatment. Mobil argues that this one examination qualified him as an expert witness subject to disclosure pursuant to its Rule 220 request. 107 Ill. 2d R. 220(b)(1).

Mobil claims that the trial court should have barred Dr. Adelman's testimony because Ryan failed to list him as an expert witness or disclose the substance of his testimony pursuant to its Rule 220 request. Ryan, on the other hand, asserts that Rule 220 does not govern treating physicians.

Supreme Court Rule 220 (107 Ill. 2d R. 220), governs the disclosure of expert witnesses. The rule requires the disclosure of those experts who are "retained to render an opinion at trial." (107 Ill. 2d R. 220(b).) Rule 220 does not, however, specifically address whether a treating physician, who obtains his opinion by caring for a patient rather than in anticipation of litigation, is to be included within the category of experts who are specifically "retained" for the purpose of rendering trial testimony.

This threshold issue was recently addressed by the court in *Diminskis v. Chicago Transit Authority* (1987), 155 Ill. App. 3d 585, 508 N.E.2d 215. In *Diminskis* the defendant argued that the testimony of a treating physician should have been excluded because the plaintiffs did not list the physician as an expert in response to a Rule 220 request. The court rejected this argument holding that a treating physician is not an expert witness within the meaning of Rule 220. The court reasoned that a party only hires an expert witness for his ability to testify at trial. On the other hand, "the relationship between the treating physician and his patient is healing-oriented with the treating physician retained for his knowledge of medicine rather than his ability to testify before a jury. A treating physician certainly cannot be placed in the same category as the hired expert who becomes associated with a case only at the request of an attorney and whose sole purpose is to convey a certain message to a jury." *Diminskis v. Chicago Transit Authority* (1987), 155 Ill. App. 3d 585, 591, 508 N.E.2d 215, 219.

*Diminskis* is analogous to the instant case. Ryan did not contact Dr. Adelman for his prowess as an expert witness. Rather, he came to him as a patient in need of immediate medical care. For several years following the initial visit, Ryan visited Dr. Adelman for the purpose of medical advice and diagnosis. The entire character of their relationship was "healing-oriented," not litigation-oriented. When Dr. Adelman examined Ryan prior to trial, in preparation for testifying, we do not believe he became an expert witness subject to Rule 220. Dr. Adelman's examination merely reinforced opinions that he had de-

veloped during years of treating Ryan. Thus, we hold that Dr. Adelman was a treating physician, not an expert witness subject to Rule 220.

## V

■ Mobil claims that it suffered extreme prejudice when the court refused to allow its expert witness, Dr. Alvin Kanter, to examine plaintiff before or during trial. Mobil points out that plaintiff's physician, Dr. Douglas Adelman, in preparing for trial, examined Ryan and also testified based on these findings. It argues that Ryan had an unfair advantage at trial because Dr. Adelman "was allowed to testify based on his review of the medical records and his examination of Plaintiff, [but] the testimony of Mobil's expert was restricted to a review of the [medical] records only."

Our examination of the record indicates that during trial the court never refused to allow Dr. Kanter to examine plaintiff. Instead, it appears that Mobil never requested a ruling on its motion to examine plaintiff. Mobil can hardly claim prejudice when it failed to vigorously pursue its motion before the trial court. See *Malek v. LeDerle Laboratories* (1987), 152 Ill. App. 3d 493, 504 N.E.2d 893.

■ Assuming, *arguendo*, the trial court did in fact refuse Mobil's motion, no prejudicial error resulted. A further examination here would not have revealed the cause of Ryan's medical problems since his ruptured disc had already been removed by surgery on March 7, 1983. Also, Mobil's expert, Dr. Kanter, stated in his testimony that he had Ryan's complete medical records. Furthermore, Dr. Kanter testified that in his opinion the plaintiff suffered no permanent injury from the accident on Mobil's premises. His testimony could not have been more favorable to Mobil's position if he had examined Ryan during trial. Mobil's claim that it suffered extreme prejudice is ill-founded.

## VI

■ Defendant next claims that the trial court committed prejudicial errors when it refused to allow Mobil to impeach Ryan's credibility. First, Mobil contends that the trial court should have allowed it to impeach Ryan with his complaint in an earlier personal injury lawsuit. In this earlier lawsuit, Ryan alleged that he "sustained severe and permanent injuries" as a result of an automobile accident.

The court refused to allow impeachment with a prior complaint in *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 582-83, 430 N.E.2d 169, 173. In *McDonnell*, the court found that:

"[U]nsigned complaints cannot be used for impeachment or as admissions against interest of a party thereto in another action based on the same incident. [Citation.] Without a verification there is no evidence that the party authorized or confirmed the truth of the allegations." 102 Ill. App. 3d 578, 582-83, 430 N.E.2d 169, 173.

In the instant case, the earlier complaint also was not verified. So, like *McDonnell*, there is no evidence that Ryan authorized or confirmed the truth of the allegations. Moreover, assuming the trial court erred in excluding the earlier complaint, this exclusion would not require reversal. The record is replete with questions by defendant's counsel concerning plaintiff's prior back injury. Defendant's counsel discussed the earlier lawsuit and injuries at length before the jury. We fail to see how admission of the earlier complaint would have further impeached plaintiff's credibility in any material respect.

■■■ Next, Mobil argues that it should have been allowed to impeach Ryan with evidence that showed prior criminal activity at another job, not his back injury, prevented him from resuming employment. Mobil claims that it should have been allowed to use the employment records of C. H. Heist which revealed that Ryan had been caught dealing drugs from the back of a company truck, and C. H. Heist would not reemploy him.

Supreme Court Rule 236 (87 Ill. 2d R. 236) permits introduction into evidence "[a]ny writing or record *** made as a memorandum or record of any act, transaction, occurrence, or event, *** if made in the regular course of any business, and if it was the regular course of the business to make such a record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter." However, a trial court has some discretion when it comes to admitting business records, and it must scrutinize the integrity and probative value of the evidence. (*Neal v. Whirl Air Flow Corp.* (1976), 43 Ill. App. 3d 266, 275, 356 N.E.2d 1173, 1179.) A reviewing court will not disturb a trial court's decision to exclude business records absent an abuse of discretion. *Neward Electronics Corp. v. City of Chicago* (1970), 130 Ill. App. 2d 1021, 1028-29, 264 N.E.2d 868, 873.

The business record in the instant case is a letter Commonwealth Edison sent to Ryan's former employer, C. H. Heist, when Edison was considering plaintiff's employment application. The letter posed a number of questions about plaintiff's employment history. In response to the question, Would you rehire Ryan? someone at C. H. Heist remarked that the company would not rehire him because he was dealing drugs. The letter is not signed, nor does it give any details or the

basis for the remark.

■ This letter has minimal probative value. At best the letter shows that one employer of laborers, C. H. Heist, would not rehire him. It is very possible that Edison did not hire plaintiff because of his injury or because it had no positions available. The letter does not show that plaintiff did not resume employment for reasons other than his injury. Excluding a very prejudicial letter that contains bald accusations which have minimal probative value was a proper exercise of the trial court's discretion.

■ Lastly, Mobil claims that the trial court erroneously entered an order *in limine*, excluding plaintiff's prior conviction for possession of a controlled substance. A witness' prior conviction can be used in a civil suit to impeach that witness' credibility. (*Baldwin v. Huffman Towing Co.* (1977), 51 Ill. App. 3d 861, 863, 366 N.E.2d 980, 981-82.) For a conviction to be admissible it must be for a crime punishable by death or imprisonment in excess of one year, or involved dishonesty or false statements regardless of the punishment. In either case, the trial judge must determine whether or not the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Evidence of the conviction is not admissible if a period of more than 10 years has elapsed since the date of conviction or the release of the witness from confinement, whichever is the later date. *People v. Montgomery* (1971), 47 Ill. 2d 510, 516-19, 268 N.E.2d 695, 698-700.

■ The facts of *Baldwin v. Huffman Towing Co.* (1977), 51 Ill. App. 3d 861, 366 N.E.2d 980, are substantially similar to the instant case. In Baldwin, the court excluded a 4½-year-old conviction for possession of heroin in an action for personal injuries. The court found that plaintiff was not an addict and he was not under the influence of narcotics at the time of his injury. It excluded the prior conviction because "many people believe that once a user or addict always a user or addict, we conclude, as did the trial court, that the prejudicial effect of the evidence of plaintiff's conviction *** far outweighs the probative value it would have in determining plaintiff's credibility." 51 Ill. App. 3d 861, 864, 366 N.E.2d 980, 982.

As in *Baldwin*, there is no evidence that plaintiff is a user or addicted to drugs. Furthermore, there is no evidence that drugs played a role in his injuries. Moreover, his conviction was quite stale and within months of the 10-year cutoff. In light of these considerations the court correctly excluded the prior conviction for possession of drugs as being more prejudicial than probative.

## VII

■■ Mobil next argues that error was committed when the trial court allowed plaintiff to question James Bruno and Ralph Mosca regarding their interpretation of certain language in the Mobil/J-B contract. Furthermore, Mobil claims that excerpted portions of the contract contained in a typewritten exhibit were erroneously sent to the jury. According to Mobil this exhibit was never received into evidence.

We have reviewed the relevant portions of the record where Mobil claims that Mosca and Bruno "interpreted" the contract. The record does not indicate that Mosca and Bruno gave their interpretation of the contract. Assuming, *arguendo*, that the testimony of Mosca and Bruno constituted interpretation, they were competent to testify to the party's obligations under the contract. See *Chapman v. Checker Taxi Co.* (1976), 43 Ill. App. 3d 699, 717, 357 N.E.2d 111, 124-25.

The trial court properly sent to the jury Ryan's exhibit containing excerpts from the contract. It is undisputed that defendant stipulated that the entire contract was admissible. Excluding portions of the contract that the court considered to be irrelevant or confusing to the jury is within the court's discretion. (*Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1018, 498 N.E.2d 867, 873.) The court properly exercised its discretion when it excluded all but the relevant excerpts from the contract.

## VIII

■■ Mobil maintains error was committed when the trial judge instructed the jury on the OSHA regulations. In particular, defendant objects to plaintiff's instruction 26, which asserted that Mobil could be negligent if it:

> "(b) Permitted vehicles to be used to transport employees inside the refinery without seats firmly secured and adequate for the number of employees to be carried."

This language follows the requirements of the OSHA regulation concerning secured seating in trucks. See 29 C.F.R. sec. 1926.601(8) (1985).

Mobil once again claims that this instruction should not have been given because it did not owe Ryan a duty to enforce this regulation for his benefit. As we discussed earlier, Mobil's duty is derived from its contract with J-B. One of the specifications of the contract was that J-B's work conform with OSHA. Mobil had a duty to insure that this specification was followed. Thus, the trial court correctly instructed the jury that Mobil could be held liable for failing to require conformance with this OSHA regulation.

## IX

■■■ Finally, Mobil argues that the jury's verdict is excessive and its finding of 25% comparative negligence is against the preponderance of the evidence. Mobil claims that the verdict and finding of comparative negligence resulted from bias, prejudice and error committed by the court. We have reviewed the record exhaustively and have found no instances of reversible error by the trial court. Our review further indicates that the trial judge was circumspect in guarding against improper evidence that could have biased or prejudiced the jury. Accordingly, we conclude that the jury's verdict of $520,000, which had been reduced by 25%, is supported by the evidence, and we will not disturb the verdict on appeal.

## X

■■■ At this juncture we consider J-B's appeal. J-B raises many of the same issues as Mobil on appeal. We will consider the issues that only J-B raises.

It is J-B's position that the jury's finding that it was negligent and 50% liable to Mobil was against the manifest weight of the evidence. J-B argues that it was using the utmost care when it was driving across the graveled roadway. Furthermore, it contends that it was maintaining an adequate lookout, but the potholes were a latent danger that it could not detect.

On appeal, we cannot overturn the jury's verdict unless a conclusion "contrary to the jury's is clearly evident, plain, and indisputable." (*Harris v. Day* (1983), 115 Ill. App. 3d 762, 769, 451 N.E.2d 262, 268.) The jury as trier of fact is in a superior position to a reviewing court to determine the witnesses' credibility and weigh the evidence. (*Schulenberg v. Signatrol* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626.) In light of these rules we consider whether the jury's finding with respect to J-B is supported by the evidence.

The evidence of J-B's alleged negligence is very limited. Mobil presented evidence that J-B's employee drove the truck at 5 to 8 miles per hour in a 10-miles-per-hour zone. Under the circumstances in this case, the driver's rate of speed cannot be considered excessive. Proceeding at 5 to 8 miles per hour in the graveled area, even if there were puddles, was using ordinary care. The driver could literally go no slower and still make progress.

Mobil argued to the jury that J-B's employee was negligent for failing to maintain an adequate lookout for unsafe conditions. As we discussed earlier, the unsafe condition in the roadway, the potholes, were a latent danger. The evidence is uncontradicted and undisputed

that the potholes looked like puddles to everyone who observed them. Since the unsafe condition could not be detected, the evidence simply cannot support a finding of negligence on this basis.

Mobil argues, however, that the jury's verdict against J-B is sustained by the evidence because J-B's employees chose an improper route, it was the condition of J-B's truck that caused Ryan to sit on the side of the truck bed, and it was J-B's responsibility to insure its employees followed Mobil's safety rules. Assuming all of the above facts are true, this evidence has no bearing on the jury's verdict against J-B. Mobil only went to the jury on two issues of alleged negligence by J-B: (1) whether its employees were driving at an excessive rate of speed; (2) whether its employees failed to maintain an adequate lookout. Mobil did not send any questions of negligence to the jury concerning the usage of an improper route, improper maintenance of its truck, or failure to enforce safety regulations. The evidence that Mobil cites to support the jury's verdict is inapplicable to the issues that were before the jury.

It is indisputable that the jury's finding of negligence with respect to J-B was against the manifest weight of the evidence. The evidence did not show J-B was negligent because its driver operated the truck at an excessive rate of speed, nor did it show that the driver failed to maintain an adequate lookout for unsafe conditions. We reverse the jury's verdict concerning J-B and the judgment entered on the verdict, and remand this cause with directions to enter judgment notwithstanding the verdict in favor of J-B and against Mobil.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed and remanded in part with directions to enter judgment consistent with this opinion.

Affirmed in part, reversed and remanded in part.

QUINLAN, P.J., and CAMPBELL, J., concur.