ELIZABETH DIMINSKIS, as Plenary Guardian of the Estate and Person of Victor Diminskis, *et al.*, Plaintiffs-Appellees, v. THE CHICAGO TRAN-SIT AUTHORITY *et al.*, Defendants-Appellants.

First District (4th Division)  No. 85—2912

Opinion filed April 27, 1987.

Hoffman, Burke & Bozick, of Chicago (Gary W. Bozick and Edmund J. Burke, of counsel), for appellants.

Hofeld & Schaffner, of Chicago (Albert F. Hofeld and Howard Schaffner, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Defendant Chicago Transit Authority (CTA) brings this appeal seeking reversal of a jury's verdict in favor of the plaintiffs, Victor and Elizabeth Diminskis, and against the CTA. The Diminskis' instituted their personal injury suit following an accident in which a bus owned and operated by the CTA struck and seriously injured Victor. Victor's action charged the CTA with negligence while Elizabeth sought recovery for the loss of Victor's consortium. At the close of the trial, the jury awarded Victor and Elizabeth $400,000 each.

On appeal, the CTA contends that a new trial should be ordered. Specifically, the CTA contends that the following defects prejudiced the outcome of the trial: (1) the trial court erred in prohibiting the

CTA from introducing several alleged admissions previously made by Victor during his evidence deposition; (2) the trial court erred in permitting Dr. Kelvin Von Roenn to testify where Dr. Von Roenn had not been disclosed prior to trial pursuant to the CTA's Supreme Court Rule 220 request; (3) the trial court erred in admitting certain evidence pursuant to the business-records exception to the hearsay rule; and (4) a series of CTA reports were erroneously admitted. In the alternative, the CTA claims that the $400,000 award granted to Elizabeth for her loss of Victor's consortium was excessive and that a remittitur is appropriate.

Although the CTA raises several other arguments in its brief, a review of the record discloses that these arguments were either: (1) not objected to at trial and were therefore waived (*Roark v. Musgrave* (1976), 41 Ill. App. 3d 1008, 355 N.E.2d 91); (2) fell within the discretion of the trial court with the trial court committing no abuse of discretion (*M.I.G. Investments, Inc. v. Marsala* (1981), 92 Ill. App. 3d 400, 414 N.E.2d 1381); or (3) simply do not find support in the record. We affirm.

BACKGROUND

This case arose from an accident which occurred on February 3, 1983, involving a CTA bus and the plaintiff, Victor Diminskis. On that date, a CTA bus driven by defendant Harold Clemons struck Victor at the intersection of 73rd Street and Western in Chicago, causing Victor to suffer serious physical injuries. Soon thereafter, Victor filed this lawsuit against the CTA with Victor's wife, Elizabeth, seeking damages for the loss of Victor's consortium.

Subsequently, on January 28, 1985, Victor was declared incompetent and Elizabeth was appointed the plenary guardian of his estate and person.

At trial, Victor was not called upon to testify. However, Victor's wife, Elizabeth, did testify. She stated that prior to the accident, Victor was the treasurer of the Lithuanian Youth Center, that he was the director of the "Fighter for Freedom Museum," and that he was an active gardener. Elizabeth also stated that as a result of the accident, Victor no longer participates in any of those activities. She testified as to Victor's physical and emotional condition after the accident and throughout his recovery period. She further testified that her marriage to Victor was very pleasant prior to the accident and that their relationship was very different now.

Several witnesses testified that they were present at the scene of the accident and saw what occurred.

Edward Buckels was a witness to the accident. Buckels stated that Victor was on the median strip at the time of the accident. Buckels further testified that the bus was traveling at a speed of 20 to 25 miles per hour prior to the bus' impact with Victor. Buckels also claimed that Victor was hit from the rear by the bus and did not run into the bus' path.

Edward Petrasek was also present at the scene of the accident. He testified that the saw Victor step off the curb and walk to the median strip. Petrasek stated that he believed the bus was traveling at a speed of 25 to 30 miles per hour prior to the accident. Although Petrasek did not actually see the bus strike Victor, he did assist Victor after the accident until the paramedics arrived.

Defendant Harold Clemons was called by the plaintiffs as an adverse witness. Clemons testified as to his version of the events leading up to and following the accident. Clemons stated that he was driving a CTA bus on the day in question. Clemons claimed that his bus was traveling between 5 and 15 miles per hour prior to the accident. Clemons said that when he first saw Victor, Victor temporarily froze in front of his bus. Clemons asserted that he then turned the bus to the left to avoid hitting Victor only to have Victor run to the left into the path of Clemons' oncoming bus. Although Clemons applied his brakes, he could not avoid coming into contact with Victor.

Fletcher Freeman also witnessed the accident. He was a passenger on the bus at the time of the collision. Freeman's testimony corroborated that of Clemons. Freeman stated that Victor ran into the path of the bus and that Clemons could do nothing additional to avoid hitting Victor.

Other witnesses included a nurse, who testified as to the extent of care, and the cost thereof, that Victor would require should her nursing service provide in-home care to Victor. In addition, the paramedic who arrived after the accident testified as to Victor's physical condition immediately following the accident.

Dr. Kelvin Von Roenn, one of Victor's treating physicians, also testified. He testified over the objection of defense counsel (see discussion *infra*) as to the extent of Victor's injuries and as to Victor's potential to recover.

In addition, several employees of the CTA also testified. These employees testified as to certain reports that are routinely filled out by CTA employees following an accident (see discussion *infra*) and as to the condition of the bus before and after the accident.

Finally, Victor's employer testified as to Victor's job duties, as to his mental awareness before the accident, and as to Victor's annual

income before he suffered his injury.

After the parties delivered their closing arguments and following the trial court's instructions, the jury returned a verdict in favor of Victor and Elizabeth and against the CTA. Specifically, the jury awarded $400,000 to Victor for the injuries he suffered and $400,000 to Elizabeth for her loss of Victor's consortium.

The CTA now brings this appeal.

OPINION

I

■■ We first address the CTA's contention that the trial court erred in barring the CTA from introducing certain parts of Victor's deposition. The CTA claims that Victor made several admissions in his deposition and that the CTA should have been able to introduce those admissions into evidence.

It is undisputed that Victor suffered a severe injury to his brain as a result of the accident. In fact, Victor has been declared by the probate court to be mentally disabled.

Prior to Victor's deposition, plaintiffs' counsel informed the CTA that Victor was incompetent to testify. However, because Victor's testimony could lead to discoverable information, it proceeded. See *Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 132 N.E.2d 532.

A review of Victor's deposition reveals clearly that the trial court did not err in finding Victor to be incompetent (because of his inability to recollect) to testify at the time of his deposition. In brief, Victor's answers disclose that he was, at the least, seriously confused as to what occurred prior to and immediately following the accident involving the CTA bus. He was unable to properly state the location of the accident, the time at which it occurred, the date on which it occurred, or even why he was at the scene of the accident. That being the case, we agree with the trial court that Victor's inability to recollect rendered his testimony inadmissable. Thus, the trial court did not abuse its discretion in prohibiting the CTA from introducing into evidence certain answers contained in Victor's deposition. Accord, *Clements v. Schless Construction Co.* (1968), 91 Ill. App. 2d 19, 26, 234 N.E.2d 578.

II

We next address the question of whether a plaintiff is required to disclose, pursuant to a defendant's Supreme Court Rule 220 request,

that the plaintiff intends to call one of the plaintiff's treating physicians to testify as to that physician's medical opinion.

Prior to trial, the CTA tendered to the plaintiffs a Supreme Court Rule 220 (87 Ill. 2d R. 220(b)(1)) request asking the plaintiffs to identify all of the experts which they intended to call at trial. In their response, the plaintiffs failed to list Dr. Kelvin Von Roenn, a neurologist who had previously treated Victor. The plaintiffs did, however, list Dr. Von Roenn as a treating physician in an answer to an interrogatory propounded by the CTA and did provide the CTA with Dr. Von Roenn's medical records. Subsequently, when the CTA learned that the plaintiffs intended to call Dr. Von Roenn to testify at trial, the trial court granted the CTA leave to depose Dr. Von Roenn.

The CTA claims that the trial court should have barred Dr. Von Roenn from testifying because the plaintiffs failed to list him as an expert witness pursuant to their Rule 220 request. The plaintiffs, on the other hand, assert that they are not required, under Rule 220, to list treating physicians as expert witnesses.

■■■ Supreme Court Rule 220 (87 Ill. 2d R. 220) governs the disclosure of expert witnesses. The rule requires the disclosure of those experts who are "retained to render an opinion at trial." (87 Ill. 2d R. 220(b).) Rule 220 does not, however, address whether a treating physician who obtains his opinion by assisting a patient rather than in anticipation of litigation is to be included within that category of experts who are specifically "retained" for the purposes of rendering trial testimony. We nevertheless believe that the supreme court did not intend for treating physicians to fall within the parameters of Rule 220.

To begin, in preparing Rule 220, the supreme court relied heavily upon the existing Federal Rules of Civil Procedure for guidance. (Ill. Ann. Stat., ch. 110A, par. 220, Committee Comments, at 439 (Smith-Hurd 1985).) Under Federal court practice, a treating physician is not considered a testifying expert (under Fed. R. Civ. P. 26(b)(4)) because that physician obtained his opinion in giving aid to a patient, rather than in response to an attorney's inquiry. (See, *e.g., Baran v. Presbyterian University Hospital* (W.D. Penn. 1984), 102 F.R.D. 272.) In this respect, the opinion offered by a treating physician, as well as the manner in which it was obtained, is similar to other witnesses who become involved in litigation, not as a result of a party's request, but rather because they were present and thereby witnessed the happening or result of a certain occurrence. Thus, under the Federal Rules of Civil Procedure, upon which the supreme court heavily relied, a treating physician is not considered a testifying expert.

Furthermore, under Rule 220, only those experts who are "re-

tained to render an opinion at trial" fall within the definition of a Rule 220 expert. A typical treating physician is not retained by the patient for the purpose of giving trial testimony; on the contrary, the patient's relationship with the treating physician becomes necessary only because the patient has sought out the physician's assistance for treatment of a particular physical or mental illness. A treating physician's relationship with his patient is not triggered at the filing of a lawsuit. Instead, the relationship between the treating physician and his patient is healing-oriented, with the treating physician retained for his knowledge of medicine rather than his ability to testify before a jury. A treating physician certainly cannot be placed in the same category as the hired expert who becomes associated with a case only at the request of an attorney and whose sole purpose is to convey a certain message to a jury. That being the case, we believe that adherence to Federal court practice is mandated and that a treating physician was not meant to be included within those experts covered by Rule 220.

In the case at bar, Dr. Von Roenn testified that he became involved with Victor Diminskis only because he was on duty at the hospital where Victor was brought following the accident. Dr. Von Roenn stated that he did not know Victor before the accident and that his relationship with Victor stemmed directly from his role as a practitioner of the healing arts. Furthermore, a review of Dr. Von Roenn's testimony reveals that he testified as to the facts surrounding Victor's condition following the accident and that he did not rely on any outside material in forming his opinion. Under these circumstances, the trial court correctly ruled that Dr. Von Roenn was not an expert under Rule 220 and thus did not have to be disclosed in response to the CTA's Rule 220 interrogatory.

## III

■ The CTA's third assignment of error relates to the plaintiffs' use of a report completed after the accident by the CTA. The CTA contends that an improper foundation was laid for the use of the report and that the trial court erred in not sustaining the CTA's objection. Specifically, the CTA claims that because defendant Harold Clemons (the driver of the CTA bus involved in the accident) was not the "custodian" of the accident report, the use of the report during his testimony was improper.

Supreme Court Rule 236 governs the introduction of business records. Rule 236 states in relevant part:

"Any writing or record, whether in the form of an entry in a

book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business', as used in this rule, includes business, profession, occupation, and calling of every kind." (87 Ill. 2d R. 236(a)).

Under the terms of Rule 236, therefore, a record of any occurrence, made in the regular course of any business, and pursuant to a regularly conducted practice by the business, is admissible as an exception to the hearsay rule. It is necessary that a custodian, *or* someone familiar with the business and its mode of operation, testify as to the business' regular course of practice. *Secco v. Chicago Transit Authority* (1955), 6 Ill. App. 2d 266, 270, 127 N.E.2d 266.

In the case at bar, we believe that Clemons' testimony was sufficient to introduce the accident report. Although it is true that Clemons was not the actual "custodian" of the report, nevertheless, he was clearly familiar with the CTA's regular method of post-accident practice. Clemons testified that following the accident, a CTA accident report was filled out; that the report was made out by CTA personnel; that it was made out five days after the accident; that it contained a description of the accident and of the bus involved therein; and that after the report was made out by CTA personnel, Clemons read the report and signed it without making any changes to the content of the report. Based on the above testimony, it is obvious that Clemons was familiar with the CTA's regular practice of filling out accident reports. Accordingly, the trial court did not err in permitting the plaintiffs to use the CTA's post-accident report.

## IV

■ The CTA also contends that the trial court erred in allowing the plaintiffs to show the jury a series of documents which established that the particular bus driven by Clemons had been involved in 35 prior, but unrelated, accidents. Apparently, the trial court allowed the plaintiffs to use the 35 documents as a means to establish that a dent in the CTA bus was not caused by any other reported accident and that as a result, it must have been caused by the accident involving

Victor.

The introduction of the documents relating to the other 35 accidents was error. It was well established that evidence of prior accidents is only admissible where it is relevant to the proponent's case. (*Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 449 N.E.2d 942.) In the present case, the other 35 accidents were unrelated to the one involving the plaintiff. Each was different in time, location, and the bus driver involved. Consequently, the documents related to those accidents should not have been disclosed to the jury.

■ We do not believe, however, that the trial court's mistake constituted reversible error. The record reveals that plaintiffs' counsel used the records only to prove a causal relationship between a particular dent in the bus and the accident involving the plaintiff. In addition, there was no suggestion that Clemons was the driver of the bus when it was involved in the other accidents, nor were the circumstances of the other accidents discussed or revealed. Thus, we do not believe that the trial court's mistake prejudiced the CTA's case to such an extent that reversal is required.

## V

■ The CTA's final contention is that the award granted to Elizabeth Diminskis was excessive and that a remittitur should be granted. The jury awarded Elizabeth $400,000 for the loss of Victor's consortium.

In determining whether an award is excessive, the test to be used is "whether it [the award] falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience." (*Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 334, 481 N.E.2d 957.) Upon reviewing the record, we cannot say, in light of the Diminskis' relationship beforehand, their relationship after the accident, and the present condition of Victor Diminskis, the jury's verdict for Elizabeth is shocking to the conscience.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.