VIRGINIA DUGAN, Plaintiff-Appellee, v. EDNA WEBER, Adm'x of the Estate of Emil Weber, Deceased, Defendant-Appellant.

First District (1st Division) Nos. 86—3138, 87—0261 cons.

Opinion filed October 17, 1988.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Jennifer A. Midlock, and Joshua G. Vincent, of counsel), for appellant.

Jeffrey M. Goldberg & Associates, Ltd., of Chicago (Jeffrey M. Goldberg and Constance R. O'Neill, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This is an appeal by Edna Weber (defendant), substituted defendant and administratix of the estate of Emil Weber, from a jury's award of $626,000 in a medical malpractice action filed by Virginia Dugan (plaintiff) alleging that Emil Weber, her former podiatrist, negligently performed surgery on plaintiff's bunions, requiring her to undergo additional surgeries and causing her substantial disability. The trial court, partially granting defendant's post-trial motion, reduced this award by $13,000, but assessed costs totaling $1,218 and awarded

$500 in attorney fees.

The issues presented for our review are whether defendant was deprived of a fair trial on the question of damages and whether the trial court erred in awarding $500 in attorney fees pursuant to section 2–611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–611).

In support of her claim on the issue of damages, defendant alleges four errors that by themselves or in combination denied her a fair trial. First, defendant asserts that she was prejudiced by plaintiff's failure to identify her treating physician, Dr. Rick Albin, as a Rule 220 (107 Ill. 2d R. 220) expert and to disclose his examination of plaintiff on the day of trial. Supreme Court Rule 220 governs the discovery of expert witnesses and requires that upon an interrogatory, a party must disclose the identity of an expert "who is retained to render an opinion at trial." (107 Ill. 2d R. 220(b).) The party must also reveal the substance and basis for the expert's testimony and supplement his answer to interrogatories as additional information becomes known. (107 Ill. 2d Rules 220(a) through (c).) The rule further states that the testimony of the expert at trial may not be inconsistent with or go beyond the fair scope of the facts disclosed. 107 Ill. 2d R. 220(d).

In adopting Rule 220, the supreme court did not state whether the rule covers treating physicians. Nonetheless, lower courts have addressed this issue. In *Diminskis v. Chicago Transit Authority* (1987), 155 Ill. App. 3d 585, 508 N.E.2d 215, *appeal allowed* (1987), 116 Ill. 2d 552, the court construed the rule's "retained to render an opinion" language not to include treating physicians whose initial relationship with the patient arose and whose opinions were obtained, not in anticipation of trial, but pursuant to the medical assistance rendered. (155 Ill. App. 3d at 590, 508 N.E.2d at 219.) The court based its conclusion on the supreme court's heavy reliance in drafting Rule 220 on Federal court practice, which distinguishes between experts hired for the sole purpose of litigation and experts who become involved with the patient through medical treatment.

This court has recently expounded on the court's holding in *Diminskis*. In *Ryan v. Mobil Oil Corp.* (1987), 157 Ill. App. 3d 1069, 510 N.E.2d 1162, we held that a treating physician who examines plaintiff on the eve of trial to reinforce his opinions developed from his previous treatment of plaintiff for the purpose of preparing for trial does not thereby qualify as an expert subject to Rule 220 disclosure. 157 Ill. App. 3d 1069, 510 N.E.2d 1162.

*Diminskis* and *Ryan* control the instant case. Dr. Albin's ini-

tial contact with plaintiff occurred through the medical assistance he rendered to plaintiff. After the initial treatment plaintiff received from Dr. Weber, Dr. Albin was plaintiff's treating physician for 2½ years. During that time, he performed over three separate surgeries on plaintiff's feet. Because he had not examined plaintiff in over two years, Dr. Albin examined plaintiff on the eve of trial for the purpose of reinforcing his opinion as to plaintiff's disability. Dr. Albin clearly is not in the same position as a hired expert who becomes associated with the case only at the request of the attorney and for the sole purpose to convey a message to the jury.

■■ Defendant argues that the substance of Dr. Albin's expert testimony at trial, particularly his opinion regarding the extent of plaintiff's disability and whether defendant deviated from the acceptable standard of care, transforms his status as a treating physician to a Rule 220 expert. In effect, defendant maintains that Rule 220 applies whenever the nature or purpose of the physician's testimony is to provide an expert opinion rather than merely to give testimony concerning medical treatment rendered. *Diminskis* and *Ryan*, however, clearly demonstrate that Rule 220 governs only those expert witnesses whose relationship with the plaintiff arose solely because the plaintiff retained the physician to render an opinion at trial. The physician's relationship to the case, not the substance of his testimony, qualifies him as a Rule 220 expert.

■■ Defendant next contends that the trial court committed reversible error in submitting Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971) (hereinafter IPI Civil 2d), which allows the jury to draw an adverse inference from a party's failure to produce evidence or a witness upon a finding that (1) the witness was under the control of the party and could have been produced by the exercise of reasonable diligence, (2) the witness or evidence was not equally available to an adverse party, (3) a reasonably prudent person under the same or similar circumstances would have produced the witness or evidence if he believed the testimony would be favorable to him, and (4) no reasonable excuse for the failure has been shown. The court issued this instruction because defendant failed to produce her expert witness, Dr. Mitchell Sheinkop, and certain surgical X rays. Although the submission of this instruction is warranted only when some foundation evidence is presented on these elements (*Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 318, 367 N.E.2d 472, 475), the decision to submit the instruction is within the sound discretion of the court and is subject to reversal only when a clear abuse of discretion appears on the record. *Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122

Ill. App. 3d 835, 462 N.E.2d 645; *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 342 N.E.2d 144.

■■ Defendant asserts that no foundation evidence exists to sustain a finding that defendant acted unreasonably or that the evidence would be unfavorable to her. We find that the circumstances here sufficiently support such a finding. The record discloses no reasonable excuse for defendant's failure to produce the X rays. Two X rays were taken of each foot during the surgery performed by Dr. Weber on plaintiff, and one X ray of both feet was taken the day after the surgery. Defendant never produced these X rays, alleging that they were lost. By contrast, Dr. Ronald Bies, assistant to Dr. Weber's assistant, testified that he mailed all the X rays taken on March 19, 1981, to Dr. Weber in Arizona. Dr. Weber, in his evidence deposition, testified that while not all of the X rays had been mailed, these surgical X rays had been mailed to him.

■■ Nor does the record reveal reasonable diligence on defendant's part in producing Dr. Sheinkop. The trial court denied defendant's request for a continuance because Dr. Sheinkop was vacationing out of the country during the month of August. Defendant had known of the final August trial date since the preceding May, but waited until the week before trial to contact Dr. Sheinkop's office, thereby losing the opportunity to take his evidence deposition. Defendant offered no evidence showing the jury a reasonable excuse for not producing Dr. Sheinkop even though the court provided her the opportunity to do so. Moreover, defendant's lack of due diligence is aggravated by the fact that Dr. Sheinkop returned for a week during the trial yet counsel learned of his availability only after trial. All circumstances considered, we find sufficient foundation evidence of defendant's lack of reasonable diligence or a reasonable excuse.

■■ Likewise, we find sufficient evidence in the record, as the law requires, to find that defendant would in all likelihood produce the witness under the facts and circumstances of the case unless his testimony would be unfavorable. (*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1047, 460 N.E.2d 464, 468; *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 776, 484 N.E.2d 1237, 1240.) Defendant refutes the existence of evidence which would support such a finding, citing *Pope v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1970), 128 Ill. App. 2d 325, 262 N.E.2d 369, as being similar to the situation presented here. There, the court affirmed the trial court's refusal to give the instruction because it found the absent witness' pretrial statement was not unfavorable to the defendant. Like the statement in *Pope*, defendant claims

Sheinkop's report and deposition which he submitted to the trial court was favorable to defendant since it stated that plaintiff's pain and disability were not as extensive as she claimed. While Dr. Sheinkop did contradict plaintiff's experts in his deposition, stating that plaintiff's loss of mobility would not prevent plaintiff from working, his report also contained matters unfavorable to defendant. Most significant, his report found "no plantar flexion past zero degrees," one of the reasons plaintiff had a disability, as admitted by Dr. Lowell Weil, defendant's own expert. The instant case, therefore, is unlike the situation in *Pope*, where the absent witness' prior statement was not found to be unfavorable to defendant.

Defendant also asserts that plaintiff's successful attempt to bar the use of Dr. Sheinkop's report by Dr. Weil indicates that the report was favorable to defendant. The circumstances surrounding Dr. Weil's testimony as an expert, though, demonstrate that plaintiff had reasons other than the report's content for her desire to prevent the use of the report. Before trial, Dr. Weil indicated in his deposition that he had no opinion on plaintiff's disability or on the findings in Dr. Sheinkop's report. Without supplementing the opinions of Dr. Weil pursuant to Rule 220 and after plaintiff had put on a large portion of her case, defendant sought and was granted leave to have Dr. Weil testify as to his opinion on disability. The use of the report by Dr. Weil would have been inconsistent with his pretrial statement. Furthermore, plaintiff could not effectively cross-examine Dr. Sheinkop's findings in his report since defendant had represented that he was unavailable.

Defendant's final ground for her claim that the instruction was not warranted is that Dr. Sheinkop's report was merely cumulative of the testimony elicited from Dr. Weil, citing *Chuhak v. Chicago Transit Authority* (1987), 152 Ill. App. 3d 480, 504 N.E.2d 875, *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 342 N.E.2d 144, and *Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645. Defendant asserts that the two experts' testimony would differ only in the fact that Dr. Sheinkop's opinions, as opposed to Dr. Weil's opinions, were based upon his physical examination of the plaintiff. This distinction, defendant argues, only adds weight to Sheinkop's opinion and does not alter the nature of Weil's opinion.

■ The cases cited by defendant involve testimony of particular facts already established at trial. In the instant case, Dr. Sheinkop's testimony would not merely restate specific facts; rather, his testimony would concern his personal observations and findings from a physical examination performed on plaintiff at defendant's request.

Other courts have found IPI Civil 2d No. 5.01 to be appropriately submitted in cases where a defendant has failed to call a doctor whom he retained to examine plaintiff. (*Santiemmo v. Days Transfer, Inc.* (1956), 9 Ill. App. 2d 487, 133 N.E.2d 539; *Leming v. Oltman* (1967), 87 Ill. App. 2d 97, 231 N.E.2d 621.) Accordingly, we reject defendant's contention that IPI Civil 2d No. 5.01 was improperly submitted and find that the court did not abuse its discretion in issuing the instruction.

■ Defendant's third claim of error is to the following non-IPI instruction written by the trial judge and submitted to the jury:

> "A defendant is liable for all injuries proximately caused by his negligence. These include any treatment or surgery which was reasonable and necessary to treat the injury caused by the defendant."

Defendant objects to this instruction on two grounds. First, defendant claims that it precluded the jury from finding that the additional surgeries that plaintiff endured were an inherent risk of bunion surgery and not attributable to Dr. Weber's surgery. Dr. Weber's responsibility for the additional surgeries was in fact in issue here. Although both plaintiff's and defendant's experts testified that Dr. Weber's procedure caused plaintiff to undergo the subsequent surgeries, defendant's expert contradicted plaintiff's evidence, stating that had plaintiff undergone the correct surgical procedure in the first instance, a 25% chance of complications which would require additional corrective surgeries still existed. Nevertheless, we reject defendant's claim since we do not find, as defendant urges, that the jury would assume from the instruction's language, "injury caused by the defendant," that defendant did in fact cause the injury. The instruction's two sentences clearly state that defendant is liable for those injuries proximately caused by defendant's negligence and leave the determination of whether defendant's conduct caused the injuries to the jury.

■ Secondly, defendant argues that even if the instruction properly stated the law, in light of the other IPI instructions submitted to the jury, the instruction was redundant and overemphasized defendant's responsibilities for the additional surgeries, thereby prejudicing defendant by negating the issue instruction as to defendant's denial of responsibility for plaintiff's injuries. The non-IPI instruction here was not redundant of other IPI instructions, however, since it stated law not included in those instructions. The IPI instructions defendant refers to consist of a burden of proof instruction, an issues instruction, and a short-form proximate cause instruction. These instructions relate only to defendant's responsibilities as to surgeries performed and

made more difficult as a result of Dr. Weber's surgery. The court addressed defendant's contention that plaintiff's present disabilities are due to complications from Dr. Albin's surgeries, stating the law that defendant may be held liable not only for the damages resulting from the injuries he inflicted, but also for the aggravations and complications of future surgeries. (See *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 91, 302 N.E.2d 40, 43; *Kolakowski v. Voris* (1981), 94 Ill. App. 3d 404, 418 N.E.2d 1003.) Since the instruction accurately reflects the law and there was evidence adduced at trial from which the jury could find that Dr. Weber's initial surgery caused the subsequent surgeries, we find that the tendered instruction was proper.

In her final argument on the issue of damages, defendant asserts that the trial court unfairly limited her efforts to challenge the extent of plaintiff's damages. Defendant first adverts to the court's refusal on hearsay grounds to allow her expert, Dr. Weil, to rely on Dr. Sheinkop's report as a basis for his opinion on plaintiff's damages. She contends that the Illinois Supreme Court sanctioned the use of such reports by experts in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, wherein the court adopted the Federal Rule of Evidence 703 (Fed. R. Evid. 703).

Federal Rule 703 provides that the facts or data upon which an expert bases an opinion need not be admissible "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." In issue here is whether Rule 703 as adopted by the supreme court allows experts to base their opinions on nontreating physicians' reports formed solely for purposes of trial or whether it permits only those facts and data normally relied on by physicians in their practice of treating patients. We find that the drafters of Rule 703 and the Illinois Supreme Court in its adoption of the rule clearly intended the latter.

In explaining that the rule applies to the presentation of data outside of court, the committee comments to Federal Rule 703 state:

> "The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. *** *Thus a physician in his own practice* bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." (Emphasis added.) (Fed. R. Evid. 703, Advisory Committee's Note.)

This illustration indicates that the drafters contemplated that Rule 703 would allow the expert physician to rely on data otherwise inad-

missible that a physician relies on in the course of the practice of medicine.

The Illinois Supreme Court's discussion in cases interpreting Rule 703 demonstrates its intent on this issue. Although the court stated in *Wilson* that it is irrelevant for purposes of Rule 703 whether the testifying expert is a treating or nontreating physician, it did not hold that the testifying expert can rely on data not normally relied on by physicians in the course of their practice. Rather, its discussion of Rule 703 in *Wilson* and its earlier case of *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171, indicates otherwise. In *Wilson*, the court noted the judicial economy of dispensing with the expenditure of substantial time in producing and examining various authenticated witnesses, but emphasized that "the key element in applying Federal Rule 703 is whether the information upon which the expert bases his opinion *** is reliable." (*Wilson*, 84 Ill. 2d at 193, 417 N.E.2d at 1326.) It then held, due to the "high degree of reliability of hospital records," that the testifying expert could give his opinion based upon the records despite their inadmissibility into evidence. 84 Ill. 2d at 194, 417 N.E.2d at 1326.

In *Ward*, the court elaborated on the types of reports conferring this element of reliability:

"If such reports are of a type *customarily utilized by the medical profession,* then these reports may be used as factors by an expert in the determination of his opinion ***. The restriction that these materials be *commonly used by the medical profession* attributes a high degree of reliability to them." (Emphasis added.) (*Ward*, 61 Ill. 2d at 568, 338 N.E.2d at 176.)

Evidently, the reports envisioned by the court as providing reliability were reports made and utilized during the course of medical practice, not reports formed for litigation purposes.

▮▮ To support her position that the supreme court intended to permit medical reports made in anticipation of trial to be relied on by testifying experts, defendant analogizes her situation to the case of *Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 503 N.E.2d 355, where the supreme court reversed the trial court's refusal to admit a nontreating expert's evidence deposition whose opinions were based partly upon plaintiff's recounting of the accident, his symptoms, and his statements concerning his pain and discomfort made during a physical exam. Defendant argues that the medical report here is similar to the statements in *Melecosky* since both statements are ordinarily relied on by experts in forming an opinion for trial. Notwithstanding this similarity, *Melecosky* is consistent with our

conclusion since the statements relied on by the testifying expert in that case, unlike the medical report here, are also normally relied on by experts in their own practice.

Accordingly, we hold that the trial court did not err in precluding defendant's expert from relying on Dr. Sheinkop's report as a basis for his opinion on damages since the report did not meet Rule 703's key element of reliability, as it is not of a type reasonably relied on by experts in forming opinions in the course of their medical practice.

■■ Defendant next refers to the trial court's refusal to permit defendant's expert to conduct a physical examination of plaintiff after Dr. Albin's examination on the day of trial and its refusal to allow defendant an opportunity to view the "secret" X rays reviewed by Dr. Albin which were taken the week of trial. We find that the trial court's refusals did not unfairly limit defendant on the issue of damages. The failure of the defendant to have an expert at trial who examined plaintiff was the result of defendant's own actions. Furthermore, despite defendant's lack of diligence in this regard and her failure to comply with Rule 220, the court was more than fair in allowing her expert to testify as to plaintiff's disability. In any event, defendant was not prejudiced by the court's refusals. The X rays reviewed by Dr. Albin were not introduced into evidence, nor did Dr. Albin's opinions change as a result of his examination or review of the X rays on the morning of trial. Neither was Dr. Albin an expert requiring Rule 220 disclosures.

■■ In her final argument that she was unfairly limited on the issue of damages, defendant directs us to the trial court's actions with regard to defense counsel's motion to *voir dire* plaintiff because of her surprise as to plaintiff's response concerning her psychological condition. In a procedure agreed upon by the parties, the jury submitted a written question to plaintiff, inquiring into whether she experienced any emotional distress as a result of the operations and limitations in her life. With no objection to this question from defendant, plaintiff responded that she had been seeing a psychiatrist for treatment of a nervous breakdown. The trial court denied defendant's motion to *voir dire* plaintiff outside the jury on the issue, but offered to strike the answer and instruct the jury to disregard it. Defendant refused this offer, instead choosing to argue the point in closing.

As a general rule, striking out erroneously admitted evidence will cure any error which may have been created, except in extreme cases. (*Zorn v. Zorn* (1984), 126 Ill. App. 3d 258, 464 N.E.2d 879; *Central Information Financial Services, Ltd. v. First National Bank* (1984), 128 Ill. App. 3d 1052, 471 N.E.2d 992.) We reject defendant's conten-

tion that the statement here was so inflammatory and prejudicial that a cautionary instruction would not constitute an adequate remedy. The court here did not abuse its discretion in refusing defendant the opportunity to *voir dire* the witness since it offered defendant an adequate remedy. Any prejudice defendant suffered resulted from her own tactical choices.

■ Finally, defendant contends the trial court abused its discretion in awarding $500 in attorney fees pursuant to section 2—611 of the Illinois Code of Civil Procedure because it found that defendant had made an untrue statement in her post-trial motion. Paragraph 8 of defendant's post-trial motion stated that "the court erred in not granting defendant's motion to continue the trial of this cause, said motion being based on the fact that Dr. Sheinkop was out of the country during the month of August." The trial court found the statement that Dr. Sheinkop was out of the country was untrue since Dr. Sheinkop was in fact in Chicago during the trial, a fact defense counsel discovered at the conclusion of the trial.

At the time of the imposition of fees here, section 2—611 of the Illinois Code of Civil Procedure provided, in part:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee ***." (Ill. Rev. Stat. 1983, ch. 110, par. 2—611.)

Defendant's statement here does not fall within the statutory terms since under a literal reading, the statement is accurate. The basis for defendant's motion for a continuance in fact was because her expert would be out of the country in August. In reversing the trial court's imposition of attorney fees in this case, we do not condone defendant's actions. Even though defense counsel had disclosed to the trial court at the conclusion of the trial that he had learned of Dr. Sheinkop's presence in Chicago during the trial, the statement is nonetheless misleading to a reviewing court, unaware of counsel's disclosures.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

CAMPBELL, P.J., and MANNING, J., concur.