186 Ill. App.3d 955 (1989)
542 N.E.2d 1294
WILLIAM BLAGG et al., Plaintiffs-Appellees and Cross-Appellants,
v.
ILLINOIS F.W.D. TRUCK AND EQUIPMENT COMPANY et al., Defendants-Appellees (F.W.D. Corporation et al., Third-Party Plaintiffs; The Village of Winthrop Harbor, Third-Party Defendant-Appellant and Cross-Appellee; Illinois F.W.D. Truck and Equipment Company, Third-Party Defendant-Appellee; The Village of Winthrop Harbor, Third-Party Plaintiff-Appellant; William Blagg, Third-Party Defendant-Appellee and Cross-Appellant).
No. 2-88-1065.
Illinois Appellate Court  Second District.
Opinion filed August 11, 1989.
*956 *957 John C. Healy, of Heineke, Burke, Healy & Bodach, of Chicago, and Thomas W. Diver, of Diver, Bollman, Grach & Quade, of Waukegan (Mary Beth O'Brien, of counsel), for appellant.
Michael F. Bonamarte III, of DeSanto & Bonamarte, P.C., of Waukegan (James J. DeSanto, of counsel), for appellees William Blagg and Marilyn J. Blagg.
*958 James P. DeNardo, of McKenna, Storer, Rowe, White & Farrug, of Waukegan (Christine L. Olson, of counsel), for appellees Illinois F.W.D. Truck & Equipment Company.
Reversed and remanded.
JUSTICE DUNN delivered the opinion of the court:
William Blagg was injured when he fell from a fire truck while en route to a fire as a fire fighter for the Village of Winthrop Harbor (Village). He and his wife, Marilyn, suing for loss of consortium, brought suit against the manufacturers of the truck, F.W.D. Corporation (F.W.D.) and Seagrave Fire Apparatus, Inc. (Seagrave), and the manufacturer's distributor, Illinois F.W.D. The manufacturers brought a third-party action for contribution against Village and Illinois F.W.D. Village then brought a third-party action for contribution against William Blagg. On January 25, 1986, William Blagg was awarded $426.44 per week for life in worker's compensation. On March 14, 1988, Village filed a petition asserting a worker's compensation lien for $282,251.18, which increased $426.44 every week.
Just prior to trial, plaintiffs agreed to a settlement with F.W.D., Seagrave, and Illinois F.W.D., which provided that William Blagg would receive $100,000 for his injuries and Marilyn Blagg would receive $375,000 for her loss of consortium. Village objected to the apportionment of the settlement, contending that it allowed the parties to circumvent its lien. After a hearing, the lower court approved the settlement based on a finding that it was entered in good faith. As a result of the settlement, Village was able to collect only $71,698.48 of its $282,251.18 lien. Village appeals from the order approving the settlement.
 1 Before turning to the merits of appeal, we first note that the Village's motion to strike pages 1 through 10 of plaintiffs' reply brief is granted. Plaintiffs violated Supreme Court Rule 343b(i) (107 Ill.2d R. 343b(i)) by using pages 1 through 10 of its reply brief as cross-appellant to respond to appellant Village's reply brief. The rule does not allow an appellee to respond to an appellant's reply brief.
 2 Next, we must point out that Village's statement of facts includes reference to many facts which have not been made a part of the appellate record, and appellees are also guilty of referring on numerous occasions to facts outside the record. The out-of-court discussions of the parties concerning settlement negotiations have not been made a part of the record. No depositions referred to have been made a part of the record. Nor has the pretrial memorandum referred to been made a part of the record. Appellant has attached some of these materials to its appendix; however, this is not sufficient. Attachments *959 to briefs not otherwise of record are not properly before the reviewing court and cannot be used to supplement the record. (Tomlen Group, Ltd. v. Goldfarb (1981), 101 Ill. App.3d 154, 157.) The only items made properly a part of the record include the pleadings, motions, and a few interrogatories. The only relevant facts properly before this court left to discuss include certain interrogatory answers given by plaintiffs.
William Blagg stated that as a result of his fall from the fire truck he suffered a severe cerebral concussion and was comatose for several weeks. He spent several months in the hospital. He also suffered a back injury which required surgery. Further, he had injury to his nervous system and suffered a lost sense of taste and smell; change in hearing, vision, and speech; memory lapses; difficulty walking and maintaining stability; and severe emotional and depressive episodes. William stated he has continued to need medical attention and has been unable to work.
Marilyn Blagg stated that as a result of her husband's injuries she suffered an economic loss in that many house and auto repairs that used to be done by her husband now had to be done by hired help. Also, there were many expenses for food, travel, and lodging in regard to her husband's trips to hospitals.
Appellant, Village, objects to the settlement distribution which allocates $100,000 to William Blagg for his injuries from the fall and $375,000 to Marilyn Blagg for her loss of consortium. Village contends that this allocation is in bad faith and in contravention of public policy because in allocating the major portion of the settlement to Marilyn Blagg's claim for loss of consortium, the settling parties have purposely structured a settlement to circumvent appellant's worker's compensation lien, which, at date of settlement order, amounted to $295,580.82, and increased $426.44 every week.
 3 Section 5(b) of the Worker's Compensation Act provides that an employer who has compensated an employee has a right to reimbursement from any compensation the employee receives from a suit against a third party. An employer may claim a lien "upon any award, judgment or fund" that the employee recovers from the third party. (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).) In Page v. Hibbard (1987), 119 Ill.2d 41, 50, the supreme court recently held that an employer is not entitled, however, to reimbursement from a spouse's recovery for loss of consortium. The court pointed out that a spouse was not entitled to receive compensation for loss of consortium under the Act and held that the spouse's action for loss of consortium was not a derivative claim, but an independent action to recover for injuries the *960 spouse has suffered. (Page, 119 Ill.2d at 48.) The court in Page remanded the case for a determination of whether the recovery for loss of consortium award, $12,000, which equaled the amount provided to her spouse for his injuries was "fair and reasonable in light of the total settlement." (Page, 119 Ill.2d at 50.) In reference to this order, Page cited Dearing v. Perry (Ind. App. 1986), 499 N.E.2d 268, 272, which held that the value of the claim for loss of consortium will be given legal effect only if it is determined by an independent, impartial trier of fact or if the insurance carrier is invited to participate in the settlement negotiations. Without adopting or commenting on Dearing, the supreme court remanded the case because the trial court had simply ratified the settlement allocation without determining whether it was fair and reasonable in light of the total settlement. Page, 119 Ill.2d at 50.
The court in Page did not set forth any guidelines to follow in determining whether an allocation of loss of consortium in a settlement is fair and reasonable, and no lower court has addressed this issue. Page did, however, cite to out-of-State cases which have addressed the allocation of recovery for loss of consortium in light of a worker's compensation lien. In Rascop v. Nationwide Carriers (Minn. 1979), 281 N.W.2d 170, 173, the court held that a $30,000 allocation for loss of consortium was reasonable in light of the $100,000 total award to employee and his wife. The court in Rascop referred to the following cases in making its decision: Ossenfort v. Associated Milk Producers, Inc. (Minn. 1977), 254 N.W.2d 672, 686 ($500,000 loss of consortium award not excessive where injured husband received $1,000,000); Brocker Manufacturing & Supply Co. v. Mashburn (1973), 17 Md. App. 327, 301 A.2d 501 (employee's wife settled claim for $140,000, while employee's claim was settled for $100,000); Lone v. Esco Elevators, Inc. (1977), 78 Mich. App. 97, 259 N.W.2d 869 (employee settled claim for $65,000 and wife received $60,000 for loss of consortium).
In another case cited in Page, DeMeulenaere v. Transport Insurance Co. (1983), 116 Wis.2d 322, 342 N.W.2d 56, the court remanded the cause for a trial court determination of whether the allocation of $5,000 to the loss of consortium claim was fair and reasonable in light of the total $20,000 award to employee and his wife. The court also gave the following caution:
"To insure that the result of this opinion is not misapplied or abused, we urge trial courts to closely scrutinize settlements of this nature which appear to circumvent the effects of the distribution formula contained in sec. 102.29(1), Stats." DeMeulenaere, 116 Wis.2d at ___, 342 N.W.2d at 60.
*961 In the instant case the trial court found that the Page case raised many questions, but the court approved the settlement. The court focused on the Contribution Act requirement that a settlement by a joint tortfeasor be in good faith (Ill. Rev. Stat. 1987, ch. 70, par. 302(c)) and chose to adopt a "permissive" view of the concept of good faith in approving the settlement. The court noted that two recent supreme court cases have focused on the policy of encouraging settlements under the Contribution Act. In Rakowski v. Lucente (1984), 104 Ill.2d 317, 325, the court stated:
"As a matter of public policy the settlement of claims should be encouraged. If we were now to add limitations not experienced in the general language of the settlement instrument or in the provisions of the Contribution Act, we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement."
See also Ballweg v. City of Springfield (1986), 114 Ill.2d 107, 122.
 4 Clearly, the policy in Illinois is to encourage settlements. This policy can, however, conflict with the purpose and policy of other statutes. In In re Estate of Cooper (1988), 125 Ill.2d 363, 370, the supreme court noted that the policy of favoring the settlement of claims conflicted with the enforcement of the Hospital Lien Act (Ill. Rev. Stat. 1987, ch. 82, par. 97), which serves to promote health care for the poor. In that case, the court held plaintiff and defendant could not settle a claim by setting up an annuity which would not be payable for several years because the hospital, by its lien for services rendered, had a right to immediate payment from any money due the plaintiff. (Cooper, 125 Ill.2d at 369-70.) The court held that "[t]o allow the settlement reached in this case to delay enforcement of the lien would frustrate the purpose of the Hospital Lien Act." Cooper, 125 Ill.2d at 370.
 5 In the case at bar, the policy of favoring settlements conflicts with the provision in the Workers' Compensation Act which requires the court to protect the lien of the employer. Section 5(b) of the Act provides:
"In such actions brought by the employee or his personal representative, he shall forthwith notify his employer by personal service or registered mail, of such fact and of the name of the court in which the suit is brought, filing proof thereof in the action. The employer may, at any time thereafter join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection. No release or settlement of claim for damages by reason of such injury or *962 death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee or his personal representative, except in the case of the employers, such consent is not required where the employer has been fully indemnified or protected by Court order." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).
The supreme court has stated that the clear purpose of section 5(b) is to protect the employer.
"The plain meaning of section 5(b) imposes the duty of protecting the employer's lien upon the court. The statute provides that the very point of the employer's intervention in the third-party legal proceedings is `so that all orders of court after hearing and judgment shall be made for his protection.' (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(b).) In addition, where a settlement between the employee and the third party is reached, the statute requires either the employer's consent or an order of the court protecting him. There can be little question that what is protected is the employer's right to be reimbursed for the `amount of compensation paid or to be paid by him to such employee * * *.'" Freer v. Hysan Corp. (1985), 108 Ill.2d 421, 426.
The statutory purpose of section 5(b) is clear. The employer's right to reimbursement is to be protected by the court. This statutory provision must be given priority over the policy of favoring settlements. To take a more relaxed or permissive view of settlements of this nature would allow parties to defeat entirely the protection afforded the employer by the legislature. Furthermore, a contrary holding would ignore the supreme court's ruling in Page which called for a determination of the fairness and reasonableness of the settlement allocation for loss of consortium.
 6 To give effect to section 5(b) in cases where a settlement agreement allocates an award between an employee's claim and the employee's spouse's loss of consortium claim, we hold that a trial court must, as the Wisconsin court stated, "closely scrutinize" the settlement to determine whether it is fair and reasonable to all the parties, including the employer holding a worker's compensation lien. This does not mean that a court must insure that the total amount of an employer's lien is paid before it will allow a spouse to recover for loss of consortium, but the court must not allow parties to clearly circumvent the lien by apportioning the bulk of the recovery to the loss of consortium claim. The trial court should consider whether the parties would have allocated the settlement the same way had there not *963 been a worker's compensation lien.
We note that the parties and the lower court focused on an evaluation of good faith in determining whether the settlement should be approved. The Contribution Act requires that a release to a joint tortfeasor be made in good faith. The test for this case, however, goes beyond a determination of good faith. Section 5(b) of the Worker's Compensation Act provides that the court shall protect the employer's lien. Thus, regardless of whether a court might find the settlement to be in good faith, the court must consider whether the employer's lien is protected. As stated in Page, it must be determined whether the allocation is fair and reasonable. This determination should be made while keeping in mind the employer's lien.
 7 Turning to the settlement in this case, we find the agreement does not fairly and reasonably allocate the award between William for his injuries and Marilyn for her loss of consortium. We believe the settlement represents an obvious attempt to circumvent the employer's lien. It is most doubtful that the parties would have settled in this manner had there been no worker's compensation lien. Unlike the cases cited in Page, where the loss of consortium recovery was less than the amount recovered by the employee, the loss of consortium recovery in this case is over three times the recovery provided the injured employee. There is no basis in the record to support this allocation. The minimal amount of evidence included in the record pertaining to damages shows that William suffered a serious debilitating injury which will likely cause him to suffer for the rest of his life. It appears that he will not be able to return to work and will continue to need medical attention. While it is clear William's injuries have and will continue to cause his wife to suffer a loss of consortium, it is inconceivable that her loss could be three times as great as that of William, who suffered the accident. We note also that the only evidence in the record pertaining to Marilyn's loss of consortium comes from her interrogatory answers, which briefly describe added expenses brought about by the accident, including expenses for household and auto repairs, and expenses for food, travel, and lodging necessitated by William's trips to hospitals.
We have reviewed Illinois case law where the loss of consortium award was challenged as excessive, and with the exception of one case to be discussed later, we have not found any case where the loss of consortium award was greater than the injured spouse's award. See Johanek v. Ringsby Truck Lines, Inc. (1987), 157 Ill. App.3d 140, 157 (where injured husband awarded $1,188,000 for multiple disabling injuries resulting from auto accident, wife's loss of consortium reduced *964 from $880,000 to $500,000); Diminskis v. Chicago Transit Authority (1987), 155 Ill. App.3d 585, 593 (where husband awarded $400,000 for his injuries, wife awarded $400,000 loss of consortium); Kosch v. Monroe (1982), 104 Ill. App.3d 1085, 1095 (where injured wife awarded $250,000, husband awarded $50,000 for loss of consortium).
Plaintiffs argue that awarding Marilyn a larger recovery than William is justified because, had the case gone to trial, William's award could have been significantly reduced under comparative negligence. Plaintiffs contend that Marilyn's claim is separate and independent; therefore, William's negligence cannot be imputed to her. Appellant responds that any negligence attributed to William must be imputed to Marilyn's loss of consortium claim. The Illinois Supreme Court has yet to address this issue, but the Appellate Court for the First District recently adopted plaintiffs' position. In Erickson v. Muskin Corp. (1989), 180 Ill. App.3d 117, 129-32, where the court ordered that the injured employee be awarded $100,347 and the spouse $251,250 for loss of consortium, the court noted that the question of whether a loss of consortium claim is independent or derivative in relation to comparative negligence has not been directly answered, but cited the following three recent supreme court cases which it believed supported finding that negligence attributed to the injured spouse would not be imputed to the spouse's loss of consortium claim:
(1) Hammond v. North American Asbestos Corp. (1983), 97 Ill.2d 195, where the court held a wife's loss of consortium claim was not barred by the two-year statute of limitations applicable to her husband's personal injury action;
(2) Brown v. Metzger (1984), 104 Ill.2d 30, where the court held an injured spouse's settlement release for his personal injury claim did not bar his wife from proceeding with a claim for loss of consortium. The court noted that past cases have held loss of consortium actions derivative (see, e.g., Mitchell v. White Motor Co. (1974), 58 Ill.2d 159; Rollins v. General American Transportation Corp. (1964), 46 Ill. App.2d 266). The court then stated: "More recently, however, this court has spoken to the contrary in Hammond v. North American Asbestos Corp. [citation] * * *. The clear implication of that holding is, of course, that the right of the deprived spouse to recover does not depend on whether the impaired spouse's cause of action is still viable." Brown, 104 Ill.2d at 38;
(3) Page v. Hibbard (1987), 119 Ill.2d 41, where the court stated that a consortium action "is not a derivative claim *965 brought by the spouse as the personal representative of the employee, but is an independent action to recover for injuries the spouse has suffered, such as loss of support and loss of society." Page, 119 Ill.2d at 48.
The first district admitted that these cases do not directly answer the question as to whether a spouse's consortium award should be reduced by the injured spouse's negligence, but it found that the cases indicate a "shift away from the pre-Alvis (Alvis v. Ribar (1981), 85 Ill.2d 1, 421 N.E.2d 886 [which adopted comparative negligence]) concepts that all contributory negligence of an injured spouse was imputed to the spouse claiming loss of consortium." (Erickson, 180 Ill. App.3d at 130.) The court held that it appears the supreme court considers consortium claims derivative only in the sense that the injured spouse must establish liability. Once liability is established, the consortium claim is an independent action, and it is fair and reasonable to compensate a loss of consortium claimant on the basis of his or her actual injuries without deducting any amount for the negligence of the injured spouse. Erickson, 180 Ill. App.3d at 130.
 8 We are not persuaded that the three cases relied on by the first district lead to the conclusion it reached. These cases clearly establish that a consortium claim is an independent claim insofar as it is not a claim by the spouse as a representative of the injured spouse. But, this has nothing to do with whether a consortium award should be reduced by the injured spouse's negligence. We believe the most applicable authority on this point would be the past law in Illinois regarding loss of consortium under contributory negligence. Though the Illinois Supreme Court never decided whether contributory negligence barred a loss of consortium claim, the appellate court case of Rollins v. General American Transportation Corp. (1964), 46 Ill. App.2d 266, 275, establishes that the law in Illinois under contributory negligence barred a loss of consortium claim where the spouse was contributorily negligent. Thus, before Alvis v. Ribar in 1981, the law clearly considered the negligence of the injured spouse in determining whether a spouse had a claim for loss of consortium. It does not follow that under the adoption of comparative negligence, the injured spouse's negligence should be determined irrelevant to the amount of a spouse's recovery for loss of consortium. Just as the adoption of comparative negligence eased a harsh result by allowing a contibutorily negligent plaintiff to recover against a defendant for its share of negligence, it eased a harsh result in a loss of consortium case by allowing a spouse to sue in spite of the injured spouse's negligence. But, the adoption of comparative negligence does not discount plaintiff's *966 negligence altogether, and it should not be discounted in a loss of consortium claim.
To hold that a consortium claim should be reduced by the negligence of the injured spouse does not conflict with the supreme court holdings that a loss of consortium claim is independent. The claim is independent since it is brought by the spouse for his or her injuries, but it still must be recognized that the claim derives from the initial physical injury to a spouse. But for that injury, the spouse would not have a loss of consortium claim. Under comparative negligence, if an injured person's negligence contributed to his or her own injury, then that person's recovery must be deducted by the proportion of his or her own negligence. It only follows that a consortium claim must also be reduced by the proportion of the injured spouse's negligence since the spouse's loss of consortium was in part caused by this negligence. For example, if an injured spouse was found 30% negligent and defendant found 70% negligent, the spouse's consortium claim should be reduced by 30% because the defendant caused only 70% of the loss suffered by the spouse. The other 30% was caused by the injured spouse. If the spouse asserting consortium is allowed to recover from defendant without reduction of the physically injured spouse's negligence, then defendant is forced to compensate one spouse for the other spouse's negligence.
Though the Illinois Supreme Court has yet to decide this issue, it has been decided in many other jurisdictions. The States are not in agreement; however, the majority of States does apply the injured spouse's negligence against a loss of consortium claim. Lee v. Colorado Department of Health (Colo. 1986), 718 P.2d 221; Ferguson v. Ben M. Hogan Co. (W.D. Ark. 1969), 307 F. Supp. 658; Eggert v. Working (Alaska 1979), 599 P.2d 1389; Nelson v. Busby (1969), 246 Ark. 247, 437 S.W.2d 799; Hamm v. City of Milton (Fla. Dist. App. 1978), 358 So.2d 121; Thill v. Modern Erecting Co. (1969), 284 Minn. 508, 170 N.W.2d 865; Maidman v. Stagg (1981), 82 A.D.2d 299, 441 N.Y.S.2d 711; White v. Lunder (1975), 66 Wis.2d 563, 225 N.W.2d 442. But see Macon v. Seaward Construction Co. (1st Cir.1977), 555 F.2d 1; Lantis v. Condon (1979), 95 Cal. App.3d 152, 157 Cal. Rptr. 22; Stapleton v. Palmore (1982), 162 Ga. App. 525, 291 S.E.2d 445; Feltch v. General Rental Co. (1981), 383 Mass. 603, 421 N.E.2d 67.
In Lee v. Colorado Department of Health (Colo. 1986), 718 P.2d 221, the court gave three sound reasons for attributing comparative negligence to the consortium claim. First, the court noted that in the past it held that contributory negligence completely barred a spouse's claim for loss of consortium. The harsh effect of this rule would no *967 longer be felt with the adoption of comparative negligence. (Lee, 718 P.2d at 232.) Second, the court found that it was the simplest and most efficient way to reach a just result. The court stated:
"While it is true that `each spouse is equal and independent and suffers a personal loss when the other is injured,' [citation], the fact remains that the basis for recovery on a consortium claim is interference with the continuance of a healthy and happy marital relationship. The loss to that relationship resulting from an accident `is best distributed among those whose negligence caused it in proportion to the fault of each of them.'" (Lee, 718 P.2d at 232.)
Third, the court held:
"If a claim for loss of consortium were viewed as totally independent of the other spouse's personal injury claim, there would be no reason to preclude one spouse from suing another for loss of consortium or to prohibit the primary tortfeasor sued in a consortium claim from impleading the spouse who suffered the personal injuries. [Citations.] Placing one spouse in an adversarial relationship to the other over the latter's claim for loss of consortium introduces an element of legal conflict into the marriage that, far from contributing to marital harmony, will most likely have the effect of fostering discord between the parties." (Lee, 718 P.2d at 232.)
The above reasons have equal persuasiveness under Illinois law, and we adopt them in holding that a recovery for loss of consortium claim is limited by the injured spouse's negligence.
 9 Finally, plaintiffs, in a cross-appeal, contend Village is not entitled to collect on its lien because it attempted to frustrate plaintiffs' chances of recovery against defendants by asserting that William was largely responsible for his injuries, as evidenced by Village's third-party complaint against William. This argument was not raised below, and Village has moved this court to dismiss the appeal. Generally, an issue not raised in the circuit court cannot be raised on appeal. (Bell v. Louisville & Nashville R.R. Co. (1985), 106 Ill.2d 135, 141-42.) However, an appellate court may consider an issue not raised below where the record contains all the factual material necessary to decide the issue. (Bell, 106 Ill.2d at 142.) Since the necessary facts to address this issue are before the court, and the issue is likely to be raised again below, we will address plaintiffs' contention.
 10 Plaintiffs cite no cases to support their contention, and we are not persuaded by their arguments. Plaintiffs first argue that Village has an unfair bargaining position because by statute it is entitled *968 to full reimbursement for its lien. Plaintiffs argue that allowing an employer full reimbursement from a settlement allows an employer to escape liability under comparative negligence. This argument is without merit. In Illinois, employers may be held liable as a third party under the Contribution Act. (Doyle v. Rhodes (1984), 101 Ill.2d 1, 14.) Thus, the law does not provide a means by which an employer paying worker's compensation can escape greater liability. In the case at bar, plaintiffs and settling defendants have by virtue of their settlement allowed Village to escape greater liability at at this point. Plaintiffs and defendants were not, of course, forced into this settlement.
Plaintiffs' second argument is that it is unfair for the employer to take a position against its injured employee who sues others for damages. We disagree. There is nothing in the statute or case law which requires the employer with a worker's compensation lien to side with its employee in an employee's action. Furthermore, since an employer may be found liable under the Contribution Act, an employer must have the right to defend itself, which would include asserting a right to contribution against its employee for the employee's negligence. This is consistent with a recent case, Ellis v. E.W. Bliss & Co. (1988), 173 Ill. App.3d 779, 782, where the court held that an employer may settle with its employee since the employer is potentially liable under the Contribution Act. The actions of Village do not bar it from enforcing its lien.
We reverse the decision of the circuit court of Lake County approving the settlement agreement and remand the cause for proceedings consistent with this opinion.
Reversed and remanded.
McLAREN and NASH, JJ., concur.